John J. Fulton, administrator, &c. *vs.* Isaac Fulton and Catharine Fulton.

48  581
70h 477
48  581
74h  30
48b 581
15ap101
48b 581
47ap475
47ap476
48b 581
50ad142
48b 581
51ad123
51  124

A legal title, or right of possession is indispensable to the maintenance of an action of trover. An equitable right, merely, without any muniment of legal title, or of a legal right of possession, is not sufficient.

To allow one not a party to a note to recover it, or the value of it, from the payee, would be an anomaly in law. The maker of a note, or any one liable upon it, might maintain such an action, upon proper proof. But to allow a recovery, in such an action, on the ground that the promise contained in the note was to the plaintiff, or to one under whom he claimed title to it, would be a violation of the maxim that written contracts cannot be contradicted by parol evidence. *Per* Gilbert, J.

If the evidence be such as to show that an intended gift of promissory notes made to secure the payment of the consideration of a conveyance of real estate, did not take effect, or was revoked, the remedy of the donor's administrator is by a bill in equity, to recover the consideration of the notes from the makers, or to avoid the sale out of which they arose, and to get back the property sold.

By the common law, personal property may pass by gift or grant, with or without deed; but a parol gift, without some act of delivery, will not alter the property, whether by act *inter vivos* or *mortis causa.* But where a gift *inter vivos* is perfected by delivery of possession of the thing, or *delivery of a deed of gift*, it is complete, although made without any consideration.

An agreement between F. and his two daughters, the defendants, made on the 15th of November, 1851, contemporaneously with the sale to them of his farm and personal property, recited the consideration of such sale, which consisted in part of their five several promissory notes, each for the sum of $500, payable to the three sons and two daughters of F. at the decease of his wife. The agreement referred to those notes as being the portions that F. wished the payees to receive out of his property after the decease of himself and his wife. In December, 1857, these notes were canceled, and F. caused the makers to execute new notes in renewal, and signed a paper declaring that he intended the new notes should be considered by his children "in full of their shares in his property which he had or ever had had."

*Held* that this transaction was not fraudulent as to creditors; that no trust was created for the use of the grantor; and that it was a fair and just distribution of his estate among his children.

*Held, also,* that it transferred the legal title to the debts represented in the notes; and, with the accompanying declaration contained in the agreement, and the paper of December, 1857, furnished satisfactory evidence that there was a delivery of the notes to the payees, and that the possession of them afterwards by F. was as trustee for them.

*Held, further*, that the fact that the notes were left by the donor in a position where the beneficiaries might take them after his death was convincing proof that he did not change his mind; and no further formality, to complete the gift, was necessary.

It is only when something remains to be done, by or on behalf of the donor, which is not done before his death, that a gift fails to take effect.

An actual transmutation of possession is not essential, when the settler intends to convert himself into a trustee, and makes a sufficient declaration to that effect.

APPEAL from an order made at a special term, held by Justice BARNARD, setting aside a nonsuit granted at the circuit court, held by Justice BROWN, and granting a new trial to the plaintiff. The action was brought by the plaintiff, as administrator, &c. of John Fulton, jun. deceased. The complaint alleged " the death of John Fulton, jun. in January, 1858, and that he had in his possession at his death three certain promissory notes, dated December 10, 1857," each of the value of $500, of which one was in the following words :

" Seven years after the decease of John Fulton and Mary his wife, of the town of Milan, we promise to pay Mary Smith or order, five hundred dollars, value received, without interest, until that time. Dated the 10th day of December, 1857.

CATHARINE FULTON,<br>ELIZABETH FULTON."

That the other two notes were of like form, except that one was payable to Alethea Coopernail, and the other to George Fulton. That said defendants, soon after the death of the said John Fulton, jun. wrongfully took said notes and sold, assigned, or gave them away, by which wrongful acts they had become lost to the plaintiff, and he had been unable to obtain said notes or convert them into money, and by the loss of said notes the debts of said John Fulton, jun. remain unpaid, no assets having come into the hands of the plaintiff as administrator. That on the 20th of August, 1858, the plaintiff was duly appointed administrator of all the goods, chattels and credits which were of the said John Fulton, jun. deceased, by the surrogate of Dutchess county, and was duly

Fulton v. Fulton.

qualified to act as such administrator. The plaintiff, as such administrator, therefore demanded judgment against the defendants for $1500 damages and costs.

The answer denied the averments of the complaint, and in addition thereto set forth quite circumstantially such matter as if true, showed that the plaintiff ought not to prosecute this his naked action at law, against the defendants. The plaintiff is a brother of the defendants ; all the parties being children of John Fulton, jun. deceased.

On the trial, the plaintiff introduced in evidence letters of administration issued to him August 2, 1858, after the family meeting to which reference will be made. He introduced also a deed dated November 15, 1851, acknowledged on that day, and executed by John Fulton, jun. and Mary his wife, to Catharine Fulton, one of the defendants, and to Elizabeth Fulton, his sister, the grantees being the two unmarried daughters of the said John Fulton, jun. This deed was in consideration of natural love and affection and of $2500, and conveyed a farm containing 100 acres two roods, the homestead, together with certain wood lots, and the grantees took back from Catharine and Elizabeth their covenant bearing even date with their deed, to provide for their parents, the grantors, a support during life and during the life of the survivor of them ; to furnish them the sum of $25 yearly for spending money ; and to pay the debts of said John Fulton, jun. then existing and mentioned therein, and the agreement recited that Catharine and Elizabeth had signed notes of hand to their brothers and sisters payable after the decease of the said grantors. An additional agreement, or memorandum, signed by John Fulton, jun. and introduced by the plaintiff, and dated Dec. 26, 1857, showed a renewal of the original notes given November 15, 1851, giving the names of the brothers and sisters to whom Catharine and Elizabeth made their notes payable, and the amounts of them respectively, and showed no variation from the original transaction except only as to date, for which sole reason that memorandum was

made and left. At a family meeting, March 27, 1858, the deed, agreements and notes were laid on the table, (all present except Mrs. Coopernail.) Isaac read the papers and notes, offered the notes to the respective payees, and said, " here are your notes." John, the plaintiff, and Philip refused to take their notes then, although on a subsequent demand made by John for them he received them. George and Mary Smith took theirs respectively, and as Mrs. Coopernail was not present, her note remained for that day, but on the following Sunday she called for it, and took it from Catharine. George was the only one who at the time of the trial had negotiated or parted with a note. He swore that he had sold his. The plaintiff placed his refusal to take his note, on the ground that he was not satisfied with the arrangement ; he thought the girls, Catharine and Elizabeth, were getting too much, and not because of any rights of creditors, &c.

On these facts, substantially, the plaintiff rested his case at the circuit, and asked to recover of and from Isaac and Catharine the sum of $301 and some cents, for each of the notes taken by George, Mary Smith and Alathea Coopernail. At the close of the testimony, the defendants moved for a nonsuit, which motion was granted by the justice.

*J. W. Elseffer*, for the appellants. I. If the notes referred to were in the possession of John Fulton, jun. at the time of his death, they were notes which were given as a part of the consideration of a conveyance made Nov. 15, 1851, at a time when he was out of debt, or had provided for the payment of his debts, and could with entire propriety give the notes, or the avails of the conveyance, to whomsoever he chose. He elected then, as he had a right to do, to take that part of the consideration money for his farm, in notes payable to the persons therein named, at the time and for the amounts therein stated. He divested himself then, as he lawfully might, of the legal title and ownership of the notes, and by his own act and appointment, and that of the makers, pre-

cluded himself from *any legal action* on the notes, or for the notes, as against the makers or any other person or persons. He held them from and after that date as attorney or agent for the respective payees thereof. If his possession of those five papers had been interfered with, by any person, the legal remedy against such person for the notes would necessarily have been not in his own name, but in the name of the payee and person for whose benefit the paper or note was held by him, and to whom it was payable. Those papers, *as notes,* possessed no value in law, except only to the respective payees thereof, or in the hands of such person or persons to whom the payees might indorse them.

II. If the creditors then existing of John Fulton, jun. had not been paid by Catharine and Elizabeth pursuant to their covenant, those creditors would have sought very poor redress by claiming the possession of pieces of paper called notes, payable to persons against whom they would have no process, and against whom they ask no judgment, to compel indorsement. Clearly creditors then existing, in 1851, would not and could not have pursued such an empty phantom as a naked action at law to recover the possession of those papers, or the value of them, which, when obtained, would be to them valueless. Such creditors at that time, had they been left unprovided for, could have proceeded by bill, by which all the parties to the pretended fraud would have been brought in, so that a competent judgment could have been obtained. If the executed contract and conveyance had been fraudulent as to them, they would not have proceeded for the notes, the fruits of the pretended fraud, but would have sought a remedy which would have reached the personal and real property of their debtor, John Fulton, jun.

III. The contract was executed in 1851, and must be viewed as an executed contract as of that time. Catharine and Elizabeth were grantees and purchasers for a valuable and adequate consideration, and whatever Catharine did, either by herself or through Isaac, is to be imputed to the spirit and

requirements of a just contract then made, rather than to any tortuous or wrongful motive or act. The payment of the debts of their father then existing, the support and maintenance given by them to their father and mother for six years thereafter, and to their mother since that time, and now daily furnished to her, and the payment of the notes to the respective payees, or to their order, when due, were and are obligations which they assumed in 1851, and to the furtherance and fulfillment of them they were bound by solemn contract.

Clearly, before this plaintiff can recover the present or prospective value of those notes, he must have an adjudication against the payees or indorsers in court, as well as the makers, determining that he has a right superior to the payees, and such an adjudication as will protect the makers of the notes.

IV. In an action brought by the present plaintiff against Catharine and Elizabeth Fulton, this court has determined, and it stands *res adjudicata,* that this plaintiff, as trustee for the creditors of John Fulton, jun. subsequent to the conveyance of the property in 1851, had no rights or interest in the personal or real property, which he conveyed in 1851, or the avails thereof. The judgment and opinion of this court, in that case, entered in the year 1861, remains unmodified and unreversed. It was determined by that judgment, " that the transaction of 1851 was a just and fair settlement, and distribution of the estate of John Fulton, jun. amongst his children," and that the defendants are to be regarded as *bona fide* purchasers, is deemed conclusive here. It clearly follows that rights of others attached in some form, consequent on the execution of such a just and fair contract, and those rights, as to these notes in those other children, cannot be divested except they be brought before the court. The only debts which John Fulton, jun. created after 1851, were as surety for his son George. A bill in equity, clearly, is the only remedy, if any, which the plaintiff, as trustee for creditors, can take.

He has mistaken his remedy, if he has any, by prosecuting this purely naked action at law.

V. Trover cannot be predicated on what was done in 1858 by Catherine, nor by Isaac in her presence ; because, 1st. Whatever was done was in pursuance of a valid contract, and no rights had been adjudged then or since in favor of any other person. 2d. Because there was no conversion of the notes as such to the use of Isaac and Catherine, or either of them. 3d. Because, so far as the makers could make a delivery to the payees, they made it in 1851, and not after the death of John Fulton, Jr. 4th. Because the notes were not the property of John Fulton, Jr. at the time of his death. 5th. As this action is not for the property (which has been already passed on by this court) it cannot be imputed that Catherine and Elizabeth were fraudulent donees of the ancestor's property in possession after his death and therefore liable as executors *de son tort :* whatever might have been said in the other action involving the title of the personal property, as to their possession thereof as fraudulent donees, would clearly not apply to notes given by them in payment for the property, notes payable to persons other than John Fulton, Jr. 6th. The plaintiff seeks to affirm and hold good as against the makers, these notes ; and clearly if they had paid and taken up the notes from the payees, prior to any injunction from the court, it could merely have been said that they did an act to secure and confirm them in the possession of the personal and real property to which they took title in 1851, by discharging the purchase money therefor, or a part thereof. 7th. Catherine and Elizabeth were bona fide purchasers, so adjudged, of the property, and not fraudulent donees thereof. The property, personal and real, they converted to their use as they of right did in 1851 ; the notes were taken and converted to use by the two brothers and three sisters. 8th. Since the judgment in the former case, the plaintiff as trustee for creditors has been barred and estopped, on principle and in law as to this purely naked legal action.

He is without remedy at law as to Catherine and Elizabeth, and clearly also as to Isaac, in this action.

*H. L. Martin*, for the respondent. I. No interest or title to the notes vested in the payees therein named during the lifetime of said John Fulton, Jr. as they remained in his possession and under his control until his death. There being no delivery, the gift was void. (3 *N. Y. Rep.* 93. 2. *Barb.* 94. 10 *id.* 315.) It was void as to creditors. (14 *id.* 243.) The notes were not to be delivered until after Fulton's death. There being no consideration, the payees, being strangers to the transaction, could get no title except by will duly executed, &c.

II. These not being the property of said John Fulton, Jr. at the time of his death, passed to the administrator as assets. (2 *R. S.* 269, § 6.) All personal property of a person dying intestate passes to the administrators, except what is set off to widows and infants.

III. The defendants having taken these notes into their possession, and assumed control over them and given them away, are liable for their value. The administrator is not compelled to follow them into the hands of the payees and others that may get possession of them. The defendants having converted them, are liable for all loss and damage sustained by the estate. (2 *R. S.* 241, § 17. *Id.* 267, § 78, *4th ed.*) An administrator now stands as trustee for the creditors, and can bring an action for their benefit. (12 *Wend.* 543. 2 *Hill*, 181, 226. 1 *Sandf. Ch.* 26. 3 *Barb. Ch.* 477.) All who request, direct and advise an act to be done which is wrongful, are themselves wrongdoers, and responsible for all damages. (2 *Comst.* 517. 5 *Denio*, 92.) Any unlawful interference with the property of another, or exercise of dominion over it, is a trespass. (10 *Wend.* 349, 350. 12 *John.* 484. 9 *Wend.* 167.) Assuming a right to dispose of property is a conversion. (7 *John.* 254. 10 *id.* 172. 5 *Cowen*, 323. 23 *Wend.* 462.) An abuse of possession, or breach of

trust, is a conversion. (10 *John.* 172.) No demand was necessary. (3 *Wend.* 406. 10 *id.* 389. 23 *id.* 462.)

*By the Court,* GILBERT, J. 1. The validity of the transaction which gave rise to the notes in controversy, was affirmed by this court in the case of this plaintiff against the makers of the notes. It was sought in that case to impeach the sale in part consideration of which the notes were given, on the ground that it was fraudulent as to the creditors of the intestate. The court, however, held otherwise, and we must be governed by that decision.

2. Irrespective of the question whether there was a valid and effectual gift of the money which the makers of the notes thereby promised to pay to the payees thereof, (which we will presently consider,) we are of the opinion that this action cannot be sustained. A legal title, or right of possession, is indispensable to the maintenance of an action of trover. An equitable right, merely, without any muniment of legal title, or of a legal right of possession, is not sufficient. (*Herring* v. *Tilghman,* 13 *Ired.* 392. *Billion* v. *Carroll, id.* 431.) To allow one not a party to a note to recover it, or the value of it, from the payee, would be an anomaly in law. The maker of the note, or any one liable upon it, might maintain such an action, on proper proof. But to allow a recovery in such an action on the ground that the promise contained in the note was to the plaintiff, or to one under whom he claimed title to it, and not to the payee, would be a violation of the maxim that written contracts cannot be contradicted by parol evidence. The notes had no value, as property, to the intestate. They are only evidences of debt; and in a court of law are enforcible only in behalf of the payee. If, as is contended by the plaintiff, the evidence be such as to show that the intended gift did not take effect, or was revoked, the remedy of the administrator would be by a bill in equity, to recover the consideration of the notes from the makers, or to avoid the sale out of which they arose, and to get back the

property sold.   In such a suit, the makers and payees would be necessary parties, and a decree could be made, which would do justice to all concerned.

3. We think there was a valid and effectual gift of the money payable on the notes.   By the common law, personal property may pass by gift or grant, with or without deed, (*Com. Dig. Biens. D*, 2 ;) but a parol gift, without some act of delivery, will not alter the property, whether by act *inter vivos*, or *mortis causa*.   But where a gift *inter vivos* is perfected by delivery of possession of the thing, *or delivery of a deed of gift*, it is complete, although made without any consideration.   The statute avoids voluntary grants and gifts in fraud of creditors.   But, as before stated, we are concluded by the decision in the former case from considering the effect of this transaction upon the creditors of the intestate.   For it was then held that it was not fraudulent as to creditors ; that no trust was created for the use of the grantor ; and that it was a fair and just distribution of the estate of the intestate among his children.   The decision in that case must be deemed *res adjudicata* as to this question of fraud. The agreement between the intestate and his daughters, made contemporaneously with the sale to them of his farm and personal property, recites the consideration of such sale, and refers to the notes aforesaid as being the portions that the said John Fulton (the intestate) wishes them (the payees) to receive out of his property; after the decease of himself and his wife.   These notes were afterwards canceled, and new notes taken, in reference to which the intestate signed a paper describing them, and declaring that he intended they should be considered by his children "in full of their share in his property, real and personal, which he had or ever had had."   The intestate caused the notes to be made payable to his children, who are named therein as payees, respectively.   This transferred the legal title to the debts represented in the notes ; and with the accompanying declaration contained in the agreement and paper aforesaid, furnishes satisfactory evidence

Fulton *v.* Fulton.

that there was a delivery of them to the payees, and that the possession of them afterwards by the intestate was as trustee for them. An actual transmutation of possession is not essential, where the settlor intends to convert himself into a trustee, and makes a sufficient declaration to that effect. (*Lewin on Trusts*, 82.) Thus in *Ex parte Pye*, (18 *Vesey*, 149,) an agent was directed to purchase an annuity for a lady, but purchased it in the name of the testator, who afterwards authorized the agent to transfer the annuity into the name of the lady. Before the transfer was made the testator died. Lord Eldon held that the testator had committed to writing a sufficient declaration that he held that part of his estate in trust for the annuitant. The same principle is asserted in *Wheatley* v. *Purr*, (1 *Keen*, 551 ;) *Meek* v. *Kettlewell*, (1 *Hare*, 470 ;) *McFadden* v. *Jenkins*, (1 *id.* 458 ;) *James* v. *Bydden*, (4 *Beav.* 600 ;) *Thorp* v. *Owen*, (5 *id.* 224 ;) *Grangiac* v. *Arden*, (10 *John.* 293 ;) see also *Bunn* v. *Winthrop*, (1 *John. Ch.* 329 ;) *Souverbye* v. *Arden*, (*Id.* 240 ;) *Scott* v. *Simes*, (10 *Bosw.* 314 ;) *Van Deusen* v. *Rowley*, 4 *Seld.* 360 ; *Scrugham* v. *Wood*, (15 *Wend.* 545.)

But independently of this, there was, in contemplation of law, a delivery of the subject of the gift. That was the money payable upon the notes. " Delivery," says Chancellor Kent, (2 *Kent's Com.* 439,)⋅"in this, as in every other case, must be according to the nature of the thing. It may be constructive. It must be an actual delivery, so far as the subject is capable of delivery. It must be *secundum subjectam materiam*, and be the true and effectual way of *obtaining the command and dominion of the subject.*" That the intestate intended to make this gift to, or settlement upon, his children is unquestionable. There is no evidence that he changed his mind. The fact that the notes were left by him in a position where the beneficiaries might take them after his death, is convincing proof that he did not. No further formality to complete the gift was necessary. It is only when something remains to be done by or in behalf of the

donor, which is not done before his death, that the gift fails to take effect. The principle is well illustrated in *Harris* v, *Clark*, (3 *Comst.* 93,) although that was a case of an ineffectual gift, *mortis causa*. In that case, the gift was in the form of a draft of the donor on his bankers, and delivered to the donee, but the donor died before the presentment of the draft, and it was not accepted. The court held that the subject of the gift was *the money ordered to be paid by the draft,* and that it was ineffectual, *because, until accepted, the draft gave the donor no remedy to recover the money.* Judge Ruggles, who delivered the opinion of the court, says : "There was no revocation of the gift by the donor, and it became absolute at his death if there was a sufficient delivery of the thing given during his life ; and this depends on the question whether the draft, without acceptance, gave to the donee a remedy against the drawees, either in law or equity, to recover the money." So in *Irons* v. *Smallpiece*, (2 *B. & Ald.* 552,) Ch. J. Abbott says : "To transfer property by gift, there must be either a deed or instrument of gift, or an actual delivery of the thing to the donee." The act of delivering a note or other obligation of a third person to a donee as a gift, only furnishes evidence that it was intended by the donor as a gift of the money payable thereupon. The evidence of such intention may as well be afforded, as in this case, by a plain and unrevoked declaration of the donor, and the taking the note in the name of the donees, as by such delivery. If he retained the possession of the notes during his life, it will be intended that he did so for the benefit of the payees. Whether he did keep the notes, or whether he placed them in the hands of another, does not appear. In either case, there was a valid gift of the money payable on them. For, as was observed by Lord Justice Knight Bruce, in *Kekewich* v. *Manning*, (1 *DeGex M. & G.* 187,) "it is upon legal and equitable principle clear, that a person *sui juris* acting freely, fairly, and with sufficient knowledge, ought to have, and has it in his power, to make, in a binding and effectual manner,

a voluntary gift of any part of his property, *whether capable or incapable of manual delivery, whether in possession or reversionary, or howsoever circumstanced.*"

The order granting a new trial must be reversed, with costs.