## SUPREME COURT.

SARAH C. LOCKWOOD agt. WASHINGTON J. W. BISHOP, by WILLIAM F. VAIL, his guardian *ad litem.*

*Life insurance — construction of policy — "their children" defined.*

A policy of life insurance was taken out by B. *"for the use of his wife Sarah and children."* The policy further provided that in case *Sarah,* the wife, should die before her husband, the amount of the insurance should be payable to *"their children."*

The wife died, leaving her husband and child surviving.

B., the assured, married again, and of this subsequent marriage one child was born.

*Held,* that the *child of the assured* and his wife *Sarah* was entitled to the whole insurance.

Also, that it was not within the power of the assured to dispose of the policy, or to create in another, who had advanced the moneys to pay the premiums, a lien upon the insurance moneys, to the prejudice of the beneficiary provided for in the policy.

Also, that payment of the premiums, by a stranger to the policy, without any contract with the person entitled to the benefit of the policy, gives no title to it, or lien on the insurance moneys. In the eye of the law the person making such payment is a mere volunteer.

*New York Special Term, April,* 1876.

ON the 30th day of December, 1848, Nathaniel C. Bishop caused his life to be assured by the Mutual Benefit Life Insurance Company, for the sum of $2,500, *"for the sole use of his wife Sarah and children"* The policy of insurance further provided that in case Sarah, the wife, should die, before the decease of her husband, the amount of the insurance should "be payable to *their children,*" within ninety days after notice and proof of the death of the assured. The marriage of the assured with Sarah, the wife described by

name in the policy, occurred sometime anterior to the year 1840.

It was a first marriage for each of the parties, and they were both childless at the time. Of this marriage children were born, of whom but one survived at the date of the policy of insurance. Sarah, the wife, died in 1851, leaving her husband and this one child surviving her. This child is the plaintiff in this action.

Nathaniel C. Bishop, the assured, afterward, and in September, 1854, married again, and of such subsequent marriage there was one child, a son, born, and who is the defendant in this action.

The assured died in 1874, leaving two children, the plaintiff and defendant, him surviving.

The plaintiff, the daughter of the first marriage, claims the insurance to be wholly payable to her. The defendant, the child of the second marriage, claims to share the same equally with his sister, the plaintiff. And hence this action. The Insurance Company is itself unconcerned as to the disposition of this controversy, the amount in dispute being the one-half of the sum insured, having been by it paid into court, in pursuance of an order made for the purpose.

*Martin & Smith*, for plaintiff.

*D. McMahon*, for defendant.

VAN VORST, *J.* — In determining the claims and rights of the two children to this fund, the intention of the father, at the time the insurance was originally effected, must control, and such intention must be gathered from the words of the policy itself, by which the right of each must be settled. Subsequent relations, events and actions cannot change the direction of this money, unless contemplated by the policy, nor unless the same was made dependent upon, and to be controlled by them.

The bare fact that the premiums were continued to be paid, and the policy kept in force by the assured, after the death of the first wife, and up to his own decease, and that notwithstanding he had in the interval married again, and had another child born to him in such second marriage, cannot divest the child of the first marriage of her right to the whole sum assured, if by the terms of the policy, upon the death of her father and mother, this money was designed for her sole use, as in no way, other than by the payment of the premiums, could this right have been preserved. Such subsequent payment of premiums by the assured should be deemed to have been made to secure to the beneficiary provided for the amount of the insurance, and not to let in another, neither named nor contemplated by the policy itself.

The policy was issued "*for the sole use of his wife Sarah and children.*" As neither the assured nor his wife had any child except the issue of that marriage, the assurance must have been effected for the sole use of the then wife and child, and any children which might thereafter be born of that marriage. Although the death of the wife in the lifetime of the assured was contemplated as an event which might occur, the consequences of such death are provided for in these words, "then the amount of this insurance shall be payable to *their* children." That is the same children before contemplated. The children of the assured and his wife Sarah.

The child born of the second marriage, an event unprovided for by the terms of the policy, cannot come within the meaning of the term *their* children.

This conclusion must follow from the word " *their* " finally used, and which must be held to qualify the term children in the former part of the policy, as it does when this term is last used. Had the assured intended to provide for children, born to him after the death of his wife Sarah, the proper words to have used in such connection would have been *his* children. They would have been *his* children, but could not

properly be called *their* children in speaking of the husband and wife named in the policy.

*Greenfield* agt. *Mass. Mut. Life Ins. Co.*, cited by the defendant's counsel, and referred to in *Bliss on Life Insurance* (2d ed.), *p.* 572, is not in conflict with these views. An examination of that case shows that at the date of the policy, and at the time of the death of the assured, there were no children of the joint bodies of Fanny and John Greenfield.

When the policy was issued, the husband and wife each had children by a previous marriage, and the husband an illegitimate child.

PRATT, J., holding that as there were no children of the body of Fanny Greenfield, the words "*their*" children must have been used by John Greenfield to designate his children and her step-children. That case differs wholly from the one now considered, as at the date of this policy, as well as at the death of her mother, the plaintiff was the only child of the assured and his wife Sarah.

The remaining question to be determined arises from the claim set up in the answer in favor of the mother of the defendant, and by her assigned to him. It is plead as a counter-claim. In support of this claim, the mother of the defendant testifies that shortly after her marriage with the assured, and before the birth of the defendant, the assured gave her the policy "to keep alive" for the benefit of the children. She also testifies that, for a period of nearly twenty years, she had handed or sent the moneys to her husband to pay the premiums, and that he had, from time to time, delivered the receipts for such payments to her.

There is no positive evidence that the husband used the moneys so furnished by his wife for this purpose, except in one instance.

In regard to this claim of the defendant, it must be first observed that the defendant's mother acquired no right to the policy or the insurance money by the delivery of the policy to her. It was not within the power of the assured

to dispose of this policy, or in such manner to create rights
in another to the sum insured, to the prejudice of the
beneficiary for whose use the policy was originally taken
out.    This has been decided in many cases (*Bliss on
Life Ins.* [*2d ed.*], 554, 517; *Gould* agt. *Emerson*, 99
*Mass.*, 154: *Chapin* agt. *Fellows*, 36 ~~*Com.*~~ 132; *Barrey*
agt. *Equitable Life Assur. Society*, 59 *N. Y.*, 587; *Eadie*
agt. *Slimmon*, 26 *N. Y.*, 1, 17).

Whether the money advanced to pay the premiums, even
though it be conceded that they were actually used for such
purpose, may be interposed as a counter-claim, or set up by
way of lien on the policy and its fruits, is, however, quite
another question.

The learned counsel for the defendant cites but one case in
support of such claim, and that *Dutton* agt. *Willner* (52 *N.
Y.*, 312).    But in that case Willner, who advanced and paid
the premiums necessary to preserve the policy, was held to
be the agent of the insured, *whose legal representatives* were
entitled to the sum insured.    And as the insurance was, in
fact, for the benefit of the personal estate of the assured,
it was inequitable that the moneys paid by Willner to keep
the policy in force should not, as *against the estate*, be
allowed to him.

Had the premiums been advanced and paid by the mother
of the defendant, at the request of the *beneficiary*, there
would be justice in the claim of the defendant for the
moneys alleged to have been advanced by his mother for
such purpose.    The obligation to pay the premiums accruing
on the policy rested on the assured, and after his death his
legal representatives could make no claim for the repayment
of these sums out of the amount of the insurance.    And I
cannot well understand how the assured could, without the
consent of the beneficiary, place another person in a position
to acquire a lien on the policy or its fruits, by inducing such
person to advance the moneys to pay the premiums.    As
against the beneficiary such third person should not acquire

rights which the assured or his personal representatives could not acquire.

It may well be that the defendant's mother in advancing the moneys for the premiums did so under the conviction that her own son, the defendant, was interested in the policy, and that he would share in the insurance. In this she was mistaken.

But the plaintiff, the beneficiary, did nothing to create such belief or conviction, or to induce such advances. She had good reason to believe that the policy was kept in force by the contributions of her father.

*Burridge* agt. *Rowe* (1 *Y. & C.* [*C. C.*]), is an authority to the effect that payment of the premiums by a stranger, without any contract with the person entitled to the benefit of the policy, gives no title to it, or lien on the money. In the eye of the law, the person making such payment is a mere volunteer.

I come to this conclusion upon this branch of the case with reluctance, and would have been well content could I have felt justified in holding that, to the extent of the moneys actually advanced by the mother of the defendant to pay the premiums, she should be indemnified out of the fund in question, or rather that the defendant, as the assignee of his mother, succeeded to such claim of indemnity. But the authorities in question do not justify it, and rather remit the defendant to a claim against the estate of his father for their recovery.

There must be judgment for the plaintiff.