## O'BRIEN *v.* PRESCOTT INS. Co.

*(Supreme Court, General Term, Third Department.* July 7, 1890.)

1. INSURANCE—CONDITIONS OF POLICY—WAIVER.

A fire-insurance policy, not under seal, issued by a foreign company, provided that it should become void if the premises remain vacant or unoccupied without the written consent of the company. The premises became vacant, and the assured so notified the general agent in his town, who issued the policy, and inquired how it would be in case of fire, to which the agent replied that it was all right as long as he had been notified. *Held,* that the written consent was waived. Distinguishing *Walsh* v. *Insurance Co.,* 73 N. Y. 9.

2. SAME—PROOF OF LOSS.

The day after a loss the assured notified the agent thereof, and stated that he would furnish the proof and statement, to which the agent replied that it would be "all right." Subsequently experts and adjusters of the company examined the premises, and made estimates. *Held,* that the assured had a right to assume that the company had waived a strict compliance with a condition in the policy requiring a particular statement of the loss to be rendered within 30 days after a fire.

3. SAME—ASSIGNMENT OF POLICY.

Where the policy does not declare that an assignment without the consent of the company renders it void, a parol assignment of the policy is valid.

Appeal from judgment on report of referee.

Action by James B. O'Brien against the Prescott Insurance Company. Defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*A. H. Sawyer,* for appellant. *John H. Cleason, (D. Cady Herrick,* of counsel,) for respondent.

MAYHAM, J. This is an appeal from a judgment entered upon the report of a referee in favor of the plaintiff for $1,147.48 and costs in an action upon a policy of insurance against loss and damage by fire. The defense set up is that the assured violated the provisions of the policy, and that therefore the defendant is not liable. The policy was issued on the 3d of January, 1882, for one year, for $1,100, on a frame house, and $100 on ice-box, benches, block, and counters therein, and cash premium per year $13.30, and was payable to Whitbeck & Green, mortgagees, in case of loss, as their interest might appear. The policy had been renewed from time to time until the time of the fire,—December 28, 1885. It was executed by the president and secretary of the company, not under seal, and counter-signed at West Troy by J. H. Hulsapple, agent, and contained the provision that "this policy shall become void unless consent in writing is indorsed by the company hereon in each of the following instances, viz." Then follow numerous conditions, provisions, and qualifications, among which are the following, which are claimed by the appellant to have been violated by the assured: "If any building herein described be or become vacant or unoccupied for the purposes indicated in this contract, where a fire has occurred injuring the property herein described, the assured shall use all practicable means to save and protect the same, and shall give immediate notice of the loss in writing, to the company. A particular statement of the loss shall be rendered to this company, at its office, within 30 days after the fire, signed and sworn to by the assured." Then follows, in this article, a very minute circumstantial statement in detail of the condition of the property, the cause of the fire, condition of the title and incumbrances, amount of loss, and many other facts, circumstances, and conditions, intended, doubtless, to work a forfeiture of the policy if not performed. The policy also contained the following provisions: "Any fraud, or attempt at fraud, or any misrepresentation in any statement touching the loss, or any false swearing on the part of the assured or his agents in any examination, or in the proof of loss or otherwise, shall cause a forfeiture of all claims to this company upon this policy. And this company shall not be bound upon this policy

by any act of or statement made to or by any agent or other person, which is not contained in this policy, or in any written part above mentioned." At the conclusion of these numerous conditions the policy contains the following conditions or provisions: "This policy is made and accepted upon the above express conditions, no part whereof can be waived except in writing signed by the secretary." The defendant on this appeal insists that the plaintiff violated the provisions of the policy (1) in allowing the insured building to remain vacant; (2) in not giving timely notice of the loss, according to the conditions of the policy; (3) in giving a false and exaggerated statement of the value of the building at the time of the fire, and of the extent of the loss.

Whatever may be said of the impolicy, not to say iniquity, of the technical and generally unread provisions sometimes incorporated in insurance policies, by which the unwary policy-holder is lulled into a false security, and induced to pay premiums exacted from time to time, only to be aroused from his delusions on the happening of a loss, by notification that he has violated some, to him, unknown provisions of the policy, by which his claim for indemnity is forfeited, still, in an action upon the policy, it is the duty of the court to regard the letter of the bond, and enforce it like any other contract, according to its terms and provisions, applying to it the same rule of construction by which other contracts are interpreted.

The first question, then, is, was the fact that the building was unoccupied at the time of the fire, and had been from the middle of the preceding November, without the written consent of the company or its agent, such a violation of the terms of this policy as to render it void? The referee finds that at the time of the fire the building was not occupied for the purposes indicated in the policy of insurance; that the policy contained no consent in writing, indorsed thereon by the company or its agent, that such building should remain vacant or unoccupied; and that no written consent of any kind was ever given by the company or its agent that such building might be vacant or unoccupied. The referee also finds that in November the son and agent of the assured notified John Hulsapple, the local agent of the defendant at West Troy, that the building insured was vacant, and inquired how it would be in case of fire, and that Hulsapple said that it was all right as long as he notified the agent, and he also finds that at the time Hulsapple was the general agent of the defendant at West Troy, and transacted the general business of the defendant. On these facts the plaintiff insists that Hulsapple had the power, as between the company and the assured, to waive any of the special conditions of the policy, and that by this declaration to the plaintiff's agent he did effectually waive the procuring of the written consent of the company, and thereby estopped the company from taking the objection that the consent of the company had not been indorsed in writing by the secretary on the policy. In support of this position we are referred to the case of *Pechner* v. *Insurance Co.*, 65 N. Y. 195, where DWIGHT, C., discusses elaborately the powers of general agents of insurance companies, as to their power to bind the company by their acts and declarations, and also as to their ability by parol to waive a condition in writing in a policy not under seal. One of the questions in that case was whether a general agent of the company could by parol waive this condition in the policy: "If the insured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written herein, then and in every such case the policy shall be void." The agent issuing this policy resided in Elmira. Afterwards additional insurance was placed on the goods, with the oral consent of the agent, not written in the policy. A loss having ensued, in the trial of an action upon the policy the above facts were in substance proved, and the judge declined, on motion by defendant's counsel, to direct a verdict for the defendant, and the jury found a verdict for the plaintiff. The learned judge, in discussing the question raised by these facts, uses

this language: "The whole contest is upon the validity or invalidity of the contract, and the sole point is, can a condition precedent be waived by the words or acts of the parties? This is simply an inquiry whether a party can by his own acts be precluded from setting up a condition inconsistent with his acts, to the injury of an opposite party, whom he has thus misled." The learned judge, after discussing the question at great length on page 207, sums up his conclusion as follows: "As a result of all the cases, and of sound principle, I think it clear that a condition required by a written instrument not under seal, that an act be performed or evidenced, may be waived by parol, and that from necessity the acts going to establish the waiver may be shown by parol evidence,"—and the learned judge follows this conclusion by this remark: "There is every reason why this doctrine should be applied to insurance policies." In May on Insurance, § 143, the learned author, in discussing this question, uses this language: "The tendency of the courts is daily becoming more decided to hold that such agents may waive any of the conditions of the policy, and bind the company by such waiver, and that his promises and acts, both of omission and commission, representations, statements, and assurances, made within the scope of his authority, * * * may be set up by the insured, either on the ground of waiver or of estoppel, in answer to a claim of forfeiture." In the case of *Insurance Co.* v. *Wilkinson,* 13 Wall. 235, the court, in discussing the power of a general agent of an insurance company acting at a distance from the home office, say: "The powers of an agent are *prima facie* co-extensive with the business interest of the company intrusted to his care, and will not be by limitations not communicated to the persons with whom he deals." In *Steen* v. *Insurance Co.,* 89 N. Y. 326, the policy contained a clause substantially like the one in this case in reference to the insured property becoming unoccupied, and, on being applied to, the general agent wrote in the body of the policy a permit, but not in strict conformity to the terms of the policy, and, on being applied to on the occasion of another vacancy, said it was all right. The company was held bound by his statement upon that subject. In *Messelback* v. *Norman,* 46 Hun, 418, this court held that Bennett, who assumed to waive a condition in a policy, was not a general agent, and had not therefore the power, but says: "Had he been, he might have waived the condition;" citing *Steen* v. *Insurance Co.,* 89 N. Y. 315. In this case it is difficult to conceive of a more general agency than was showed in Hulsapple. He issued policies, and adjusted losses, renewed policies, and seemed invested with authority at West Troy to do any act that the company could have done themselves. "The power of such an agent must, in the absence of such special restrictions, be deemed to include the power to modify contracts made by him, dispense with conditions, and do such acts from time to time as are necessary to prevent a forfeiture of policies as a consequence of change of ownership, situation, or occupation of the insured property." "Insurance companies organized under the laws of one state may, and often do, carry on business in other states. They cannot conduct their business except through agents, and it is a reasonable and just inference that agents intrusted with the power to make original contracts of insurance have also the power to modify them as occasion requires." *Walsh* v. *Insurance Co.,* 73 N. Y. 9. These remarks would seem to be peculiarly applicable to this case. The defendant is a foreign company. Its business was conducted at West Troy, by Hulsapple as a general agent. Communication with the home office in Boston was inconvenient and—the general agent informed the agent of the assured—unnecessary. Even if the policy required the consent in the writing of the secretary, the assured had a right to assume, on the assurance of the company through its general agent, that notice to him was all that was necessary,—that the company would make the requisite consent through the secretary. Any other construction would put it in the power of the company, by the neglect or refusal of the secretary

to act, to nullify the contract at pleasure, after the receipt of all the benefits, by way of premiums. Notice, therefore, to the company by the assured, was all that he could do towards procuring the consent; and, when informed by the company that it was all that was necessary, he had a right to rely upon that information. In this respect the case at bar differs from the *Walsh Case, supra,* as in that case the indorsement was to be on the policy, and by the presentation of the policy by the assured to the agent the indorsement could have been procured. The referee having found the facts according to the evidence of the plaintiff, we think he was right in his conclusion of law that the condition as to the vacancy of the building was waived.

The referee also found that the declaration and assurance given by the agent, Hulsapple, to the assured and his agent, on being notified the next day after the fire of the loss, and his agreement to furnish the proof, and statement that it would be all right, was a sufficient notice to the company, and a waiver of strict compliance with the terms of the policy, and giving written notice and proof of loss within 30 days; when taken in connection with the acts of the company in making examination of the premises, and making their estimates, by their experts and adjusters, the assured had a right to assume that the notice required had been given, and that the company had waived a strict technical compliance with the language of the policy on that point. In *Goodwin* v. *Insurance Co.,* 73 N. Y. 490, it was held that, where the statement of the agent of the company had caused the policy-holder to delay in furnishing proof of loss, a strict compliance with the policy as to time was waived, the court says: "The statement of the agent of the defendant was no doubt the cause of the omission to present the proofs of the death of the insured, and misled the plaintiff into the mistake, if it can be so regarded, which is now urged as a defense. I think the act of the agent in this respect was not outside of the limits of his authority." And, after stating in a general way facts which showed that the agent was in law a general agent of the defendant, the learned judge adds: "The authorities are numerous which hold that under such circumstances the acts of the agent bind the principal, and that he has a perfect right to waive conditions of this description contained in a policy." Citing numerous authorities. The referee having found that there was a waiver upon this question by the company, if we are right as to the power of the agent, his finding was correct, and must be sustained upon this point.

The remaining question is, was there fraud practiced by the assured in the estimate of his loss? The policy provides that it shall be forfeited for fraud in the assured in reference to the same, either before or after loss. It is insisted by the defendant that the assured had been guilty of a fraudulent overestimate of value in the proof of loss. There were conflicting opinions by the witnesses at the trial as to the value, but we do not see anything in the estimate of value by the assured that would justify this court in reversing this judgment on the ground of fraud, especially as the referee upon this point had found the facts against the defendant. Fraud, in this class of cases, as well as in others, must be proved, and cannot be presumed, and it is well settled that the overestimate must be willful and intentional to defeat the claim of the assured on the ground of fraudulent overestimate of value. *Titus* v. *Insurance Co.,* 81 N. Y. 421.

The objection that the parol assignment of the cause of action in this case is invalid we think is not well founded; and, as the policy does not declare that an assignment without the consent of the company renders the policy void, we see no reason why the plaintiff, if right upon the other questions, may not maintain an action on this policy. *Marcus* v. *Insurance Co.,* 68 N. Y. 625. Judgment affirmed, with costs. All concur.