In the Matter of the Estate of RAFFAELE PASTORE, Deceased.

Surrogate's Court, Kings County, April 17, 1935.

*Irving I. Steinberg*, for the petitioner.

*Edward J. McCann*, for the respondent, George Pastore.

WINGATE, S. In this discovery proceeding the sole question not determined at the hearing is as to whether the administratrix or the respondent is entitled to the proceeds of three policies of industrial insurance, upon the life of the decedent, written by the Prudential Insurance Company. By their terms these policies were payable to the executors or administrators of the insured, subject to the option of the company to pay any other person equitably entitled, pursuant to the usual facility of payment clause.

The insurance company declined to exercise the privilege of payment accorded it under this provision of the policy, and, pursuant to the agreement of all interested parties, has stipulated that it will honor the rights of the person whom the court in this proceeding determines should receive the money.

The aggregate face of the policies amounts to $1,544. The weekly premiums totaled $1.35. These were paid by the mother of the decedent up to the time of her death, which occurred in October, 1932. Subsequent to that time, it is uncontroverted that they were paid by the respondent, George J. Pastore, who was a brother with whom the decedent resided.

The evidence which is material to this issue is uncontradicted. It appears from the testimony of the Prudential agent that in the fall of 1932, after the death of the mother, a family conference was held at which the witness was present. The decedent then stated that he desired to have the policies made payable to his brother George, the present respondent. The witness informed him that the company would not do this and suggested that he consult a notary for the effectuation of his wishes.

The decedent accordingly visited a notary, who prepared a paper which the decedent signed and verified. This reads as follows:

" STATE OF NEW YORK
   COUNTY OF KINGS

" On this 6th day of December, 1932, personally appeared before me, a notary public in and for the aforesaid county and state, Ralph Pastore residing at 244 York Street, Brooklyn, New York, who having been duly sworn deposes and states as follows:

" Due to the fact that my brother George J. Pastore has been helping me in every way, and also due to the fact that he is my nearest relative, I request the Prudential Insurance Company of America, to consider him the beneficiary on any and all policies of insurance I may have in this company, giving unto him any proceeds therefrom in case of my demise or otherwise.

" The said policies are numbered as follows. 52366071, 55344248, 72722701.

" Signed     RAPHAEL PASTORE

" Sworn to before me this
6th day of December, 1932

" JESSE JACOBS<br>" <em>Notary Public, Kings County.</em>"

The testimony of another brother who accompanied the decedent on this trip to the notary, demonstrates that this paper, after its execution, was given by the decedent to the respondent, who kept it until after the death of the insured and then forwarded it, with the policies and proofs of death, to the insurance company, which refused to honor it.

Counsel for the respondent states in his brief that the testimony demonstrates that the decedent also turned over the policies to George, but the minutes do not sustain him in this respect. The only testimony remotely construable to that effect was given by George himself, and showed that the mother had possession of the policies up to the time of her death, and then proceeds: " Q. Were they given to you? A. Yes, sir. Q. By whom? A. By a brother. Q. You had them since such time? A. Yes, sir."

It is, however, unquestioned that subsequent to the death of the mother, the policies came into the hands of the respondent and that he paid all subsequently accruing premiums thereon.

The memorandum of the petitioner is almost wholly addressed to the contention that the instrument executed by the decedent is ineffective for the purpose of substituting the respondent as the payee of the policies in the place of " the executors or administrators of the insured," as specified therein. With the exception of <em>Matter</em>

*of Bongiovanni* (147 Misc. 830), which will later be reviewed, her sole reliance is based upon the familiar line of cases relating to policies which, in the first instance, were made payable to a specified, named payee in place of whom the insured attempted to substitute another.

Frequently demonstrated popular impression to the contrary notwithstanding, there is nothing strange or mysterious about a contract of insurance. As was said by Judge CRIPPEN, writing for the unanimous court in the early case of *St. John* v. *American Mutual Life Insurance Co.* (13 N. Y. 31, at p. 39): " I am not aware of any principle of law that distinguishes contracts of insurance upon lives, from other ordinary contracts, or that takes them out of the operation of the same legal rules which are applied to and govern such contracts. Policies of insurance are choses in action; they are governed by the same principles applicable to other agreements involving pecuniary obligations."

To this may be added the words of Chief Judge PARKER in *Steinback* v. *Diepenbrock* (158 N. Y. 24, at p. 30): " a policy constitutes a contract to pay a certain amount of money to the payee on the death of the assured. It is a chose in action with all the ordinary incidents belonging thereto, and as such may be assigned either as collateral or absolutely, as the payee may elect."

Perhaps some of the misconceptions relative to the general subject are due to the numerous forms of insurance which are popularly current. While these varying forms may result in the creation of slightly different rights, either in the insured or in the indicated payees under the several forms of policies, the primary basic characteristics indicated are identical, whether the particular policy be " straight life " (*Fowler* v. *Butterly*, 78 N. Y. 68; *Olmsted* v. *Keyes*, 85 id. 593; *Ferdon* v. *Canfield*, 104 id. 143; *Cuyler* v. *Wallace*, 183 id. 291; *Schoenholz* v. *N. Y. Life Ins. Co.*, 234 id. 24; *Ruckenstein* v. *Metropolitan Life Ins. Co.*, 263 id. 204; *Lockwood* v. *Bishop*, 51 How. Pr. 221; *Matter of Babcock*, 12 N. Y. St. Repr. 841; reported by memo. only, 46 Hun, 682; *Living* v. *Domett*, 26 id. 150; *Cannon* v. *N. W. Mut. Life Ins. Co.*, 29 id. 470; *Huestis* v. *Prudential Life Ins. Co.*, 127 App. Div. 903; *Rothstone* v. *Norton*, 231 id. 59; affd., 256 N. Y. 601), industrial (*Griffin* v. *Prudential Ins. Co.*, 43 App. Div. 499; *Barnett* v. *Prudential Ins. Co.*, 91 id. 435; *Holleran* v. *Prudential Ins. Co.*, 172 id. 634; *Grogan* v. *U. S. Industrial Ins. Co.*, 90 Hun, 521; *Foryciarz* v. *Prudential Ins. Co.*, 95 Misc. 306; affd., 177 App. Div. 952; *McNevins* v. *Prudential Ins. Co.*, 57 Misc. 608), endowment (*Eisenbach* v. *Mutual Life Ins. Co.*, 162 App. Div. 595; affd., 212 N. Y. 593), or even fire insurance (*O'Brien* v. *Prescott Ins. Co.*, 11 N. Y. Supp. 125, recorded by memo. only, 57 Hun,

589; revd. on other grounds, 134 N. Y. 28). In every case the policies " are non-negotiable choses in action and are assignable." (*Johnston* v. *Scott*, 76 Misc. 641, 646.)

As is succinctly stated in *Olmsted* v. *Keyes* (85 N. Y. 593, at p. 602): " If the chose in action had been a note payable at his death his assignment thereof would have been valid, and for precisely the same reason his assignment of this policy was valid."

In view of the essential nature of the policy as a chose in action, it is obviously true that the manner of effecting an assignment in the case of an insurance policy is the same as that which may be employed with any other species of property of similar character. The historic authority determining that the assignment may be purely by parol is *Marcus* v. *St. Louis Mutual Life Ins. Co.* (68 N. Y. 625), but the reports abound in other determinations to like effect, among which may be noted *Rothstone* v. *Norton* (231 App. Div. 59, 61; affd., 256 N. Y. 601); *Holleran* v. *Prudential Ins. Co.* (172 App. Div. 634); *Barnett* v. *Prudential Ins. Co.* (91 App. Div. 435, 437); *O'Brien* v. *Prescott Ins. Co.* (11 N. Y. Supp. 125, 128, reported by memo. only, 57 Hun, 589; revd. on other grounds, 134 N. Y. 28); *Matter of Babcock* (12 N. Y. St. Repr. 841, 842, reported by memo. only, 46 Hun, 682); *McNevins* v. *Prudential Ins. Co.* (57 Misc. 608, 610); *Matter of Lynch* (135 id. 436, 437) and *Matter of O' Neill* (143 id. 69, 75).

Perhaps the chief confusion of thought is encountered in regard to the person who may make the assignment. This appears strange in view of the simplicity of the subject as a whole. No one would have the temerity to assert that an individual who chanced to be the custodian of a promissory note payable to a third party could validly transfer such note with the right to receive payment, to a stranger without the consent of the payee, yet this is precisely similar to the act of an insured in attempting to assign a policy of insurance which, by its terms, is payable to another. Obviously the custodian of the obligation may assign only such rights as are his individual property. If he attempts to do more, his act is nugatory.

When a policy of insurance is made payable to a specifically named individual, the latter, upon its going into effect, receives certain vested or contingently vested rights to receive the stipulated principal sum, upon the happening of the event upon which the obligation of the insurer is conditioned. (*Caplin* v. *Penn Mutual Life Ins. Co.*, 100 Misc. 374, 377.) This is a property right of the named payee which is no more subject to disposition by the insured than by any other person aside from the named payee himself. (*Ferdon* v. *Canfield*, 104 N. Y. 143, 146.) Of course, if the insured

himself possesses any rights in the policy, as, for example, to collect at the termination of an endowment period, or to surrender for cash, these rights may be subject to his enforcement or to disposal by him, in spite of the fact that a third party may be named as the ultimate payee in the event that the contract continues in effect until the happening of the critical condition. (*Eisenbach* v. *Mutual Life Ins. Co.*, 162 App. Div. 595, 598; affd., 212 N. Y. 593.)

The primary question in each such case, therefore, is as to whether the purported assignor was the possessor of any rights in the contract. If such rights existed and were in effect at the time the assignment was made, his transfer thereof would be possible. If, however, he had none, his attempted transfer could convey no more than that which he possessed, which is nothing. (*Ruckenstein* v. *Met. Life Ins. Co.*, 263 N. Y. 204, 207; *Ferdon* v. *Canfield*, 104 id. 143, 146; *Fowler* v. *Butterly*, 78 id. 68, 73; *Lockwood* v. *Bishop*, 51 How. Pr. 221, 224.)

Obviously, the rights of a named beneficiary to receive the proceeds of the policy upon the happening of the principal conditioning event may be either absolutely or conditionally vested. The usual case of the latter type is where the policy itself reserves to the insured the power to defeat any rights of the named payee by the performance of certain particularly specified acts, usually with the object of substituting some person, other than the named payee, as the individual to whom the principal sum is to be paid upon the happening of the limiting condition specified in the contract. Since the effect of such an act is to divest an already contingently vested right, it is obvious that the manner of its performance by the insured, as specified in the contract, must be strictly observed or the attempted divestment will be ineffectual. "The contract creating the power to appoint another beneficiary protects the existing beneficiary until the forms imposed upon the execution of the power have been substantially complied with." (*Fink* v. *Fink*, 171 N. Y. 616, 623.) (See, also, *Schoenholz* v. *N. Y. Life Ins. Co.*, 234 id. 24, 29; *Strianese* v. *Met. Life Ins. Co.*, 221 App. Div. 81, 83; *Orcutt* v. *Modern Woodmen of America*, 213 id. 530; *Huestis* v. *Prudential Life Ins. Co.*, 127 id. 903; *Matter of Bongiovanni*, 147 Misc. 830; *Matter of Schiffer*, 135 id. 830; *Seavers* v. *Met. Life Ins. Co.*, 132 id. 719; *Caplin* v. *Penn Mutual Life Ins. Co.*, 100 id. 374, 377.)

The sole remaining question in this connection concerns policies like those at bar, which are, by their terms, payable either to the estate of the insured, or what is presently most common, to his executors or administrators. The legal effect of these is to vest all rights in the policy in the insured. The contract is solely the property of the decedent himself (*Olmsted* v. *Keyes*, 85 N. Y. 593,

598), and the proceeds of the contract, when collected on his death, are viewed exactly as if they had been assets belonging to him while living. (*Matter of Knoedler*, 140 N. Y. 377, 379; *Matter of Haedrich*, 134 Misc. 741, 743, 744; affd., on opinion of this court, 230 App. Div. 763; affd., 256 N. Y. 608.)

It follows, therefore, that all rights thereunder belong solely to the insured, and he is authorized to assign or otherwise deal therewith in the same manner which is permitted him in respect to any other chose in action in his possession. (*St. John* v. *American Mut. Life Ins. Co.*, 13 N. Y. 31, 39; *Marcus* v. *St. Louis Mut. Life Ins. Co.*, 68 id. 625; *Olmsted* v. *Keyes*, 85 id. 593, 598; *Steinback* v. *Diepenbrock*, 158 id. 24, 30; *Cuyler* v. *Wallace*, 183 id. 291, 300; *Rothstone* v. *Norton*, 231 App. Div. 59, 61; affd., 256 N. Y. 601; *Living* v. *Domett*, 26 Hun, 150, 151; *Cannon* v. *N. W. Mut. Life Ins. Co.*, Id. 470, 472; *Matter of Babcock*, 12 N. Y. St. Repr. 841, 842, reported by memo. only, 46 Hun, 682; *Grogan* v. *U. S. Industrial Ins. Co.*, 90 id. 521, 523; *Griffin* v. *Prudential Ins. Co.*, 43 App. Div. 499, 501; *Barnett* v. *Prudential Ins. Co.*, 91 id. 435, 437; *Holleran* v. *Prudential Ins. Co.*, 172 id. 634; *Foryciarz* v. *Prudential Ins. Co.*, 95 Misc. 306, 309; affd., 177 App. Div. 952; *McNevins* v. *Prudential Ins. Co.*, 57 Misc. 608, 610; *Johnston* v. *Scott*, 76 id. 641, 646.)

The question in respect to this type of insurance contract is, therefore, not as to what the insured may do — since he may do anything — but as to what acts he has actually performed. Since the total rights under the contract are his, he may convey them to another, either in whole or in part and either with or without consideration.

A conveyance without consideration is obviously merely a gift (*Griffin* v. *Prudential Ins. Co.*, 43 App. Div. 499, 501; *McNevins* v. *Prudential Ins. Co.*, 57 Misc. 608, 610; *Matter of Bongiovanni*, 147 id. 830, 833), and the effectiveness of the acts relied on to demonstrate its effectuation must obviously be the same as in any ordinary case of gift.

Since, under a policy of this type, the entire ownership of every right thereunder is vested in the insured, it is difficult to perceive any reason which in principle should prevent him from making a valid assignment of part of his total rights, as, for example, the right to receive some or all of the proceeds of the policy in the future, independently of any assignment of any rights which might accrue prior to his death. If, as is unquestionable, he can assign all rights of every nature, he should be able to assign a part, since the greater inevitably includes the lesser. Assume, for example, a policy for which payment is made by a single initial payment and which provides for the payment of $10,000 to the executors of the insured

on his death and for dividends prior to his demise. Obviously, he may assign the whole under the authorities hereinbefore reviewed. Equally obviously, under the decision in *Eisenbach* v. *Mutual Life Ins. Co.* (162 App. Div. 595; affd., 212 N. Y. 593), he may validly assign the rights which he possesses during life without in any manner affecting the manner of payment of the principal sum on his death. Conversely, there is no reason in logic why he should not be able to retain for himself the rights which might accrue during his life and to assign those which would come into being only on his demise. Whereas no adjudication has come to the attention of the court in which this has been determined, the question is potentially raised in the present proceeding.

In connection with these policies, the decedent possessed two rights, *first*, during his life, to retain physical possession of the documents, and, *second*, the right to the proceeds upon the happening of the limiting condition. Controlling authority has determined that he may validly assign both together. No reason is perceived why he could not assign the latter and retain the former, since it would amount merely to an assignment of moneys to become due in the future which has universally been upheld. (*Rector, etc., of St. Mark's Church* v. *Teed*, 120 N. Y. 583, 588; *Williams* v. *Ingersoll*, 89 id. 508, 518; *Hofferberth* v. *Duckett*, 175 App. Div. 480, 485.)

Viewed from this standpoint, it is difficult to see why the document here executed by this decedent, even if it could not be upheld as a present legal assignment of the policies as a whole, did not effect an equitable assignment of the moneys payable on the policies as when they became due. " It is well settled that either a written or parol equitable assignment of a debt, claim or chose in action, if founded on a good consideration, is valid and enforcible; and that no particular form of words is necessary to constitute such an assignment but that any words will suffice which show an intention to transfer the debt, claim or chose in action." (*Hofferberth* v. *Duckett*, 175 App. Div. 480, 486.)

In the present case the demonstration of consideration in the support of the decedent for the greater part of his life, both before and after the giving of the document, and the payment of the premiums, is, under the authorities, consideration for the assignment, and the intention of the decedent, as demonstrated by his language in the instrument, that his brother should receive all sums under the policies is clear beyond a reasonable doubt. Such a result was attained by the General Term for the Third Department in *Grogan* v. *U. S. Industrial Ins. Co.* (90 Hun, 521, 523) on a document worded far less clearly than that in the case at bar.

It is far from clear in any case that the document in question with its present grant " unto him " [George] of " any proceeds therefrom [*i. e.*, the policies] in case of my demise *or otherwise* " did not effect an immediate legal assignment of all rights under the policies.

In conclusion, the matter may be viewed from the standpoint of a present gift of the policies themselves. In the ordinary case, the essentials of a gift *inter vivos* are an intent to give, delivery to or for the donee and acceptance by the latter. (*Matter of Dunne*, 136 Misc. 250, 251; affd., 232 App. Div. 831.) The last element is implied, where, as here, the gift is beneficial to the donee (*Beaver* v. *Beaver*, 117 N. Y. 421, 429; *Matson* v. *Abbey*, 70 Hun, 475, 478; modfd. on other grounds, 141 N. Y. 179; *Van Cleef* v. *Maxfield*, 196 App. Div. 734, 738; *Matter of Dunne, supra*), and the first is amply demonstrated both by the document signed by the decedent, and the testimonial evidence in the record.

The remaining element, namely, of delivery by the decedent to the respondent, has, however, not been proved. This is not fatal under circumstances such as have here been demonstrated. As is pointed out in *Matter of Cohn* (187 App. Div. 392, 395), " the rule requiring delivery is clearly subject to exceptions."

The first of these, which is peculiarly applicable to facts of the case at bar, is clearly stated in *Brinckerhoff* v. *Lawrence* (2 Sandf. Ch. 400, at p. 406): " There are many strong expressions in the books of the common law against sustaining donations, either *mortis causa* or *inter vivos*, without actual delivery. The reason of this is that gifts of both classes are usually claimed upon parol evidence, unsustained by any writing; and the courts have uniformly set their faces against such claims on account of the great danger of perjury.

" Where the intent of the donor is proved under his own hand, there is no such danger, and the courts have accordingly presumed a delivery in support of the gift, on slight evidence."

The second exception to the rule is perhaps nowhere more clearly stated than in *Champney* v. *Blanchard* (39 N. Y. 111), in which the unanimous opinion reads (at p. 116): " Delivery of the subject-matter is, no doubt, essential to a gift, either *inter vivos* or *mortis causa;* but the object of delivery is to give possession, and, in this case, possession was already complete in the donee. No further delivery was necessary, nor was it possible, without first returning the property to the donor, that it might be redelivered to the donee, an idle and unmeaning ceremony."

This doctrine, dispensing with the necessity of a demonstration of delivery in the gift of an object which is already in the possession of the donee, has been applied in this State on a number of occasions

(See *Allen* v. *Cowan*, 23 N. Y. 502, 504; *Matter of Mills*, 172 App. Div. 530; affd., 219 N. Y. 642; *Porter* v. *Gardner*, 60 Hun, 571, 574; *Stevens* v. *Stevens*, 2 id. 470, 472; *Penfield* v. *Thayer*, 2 E. D. Smith, 305, 311; *Fulton* v. *Fulton*, 48 Barb. 581, 591) and is of substantially universal application in the courts of other States (*Roethemeier* v. *Veith*, 334 Mo. 1030, 1037; 69 S. W. [2d] 930; *Briggs* v. *Leonard*, 261 Mass. 381, 384; 158 N. E. 794; *Providence Inst. for Savings* v. *Taft*, 14 R. I. 502, 504; *Wing* v. *Merchant*, 57 Me. 383, 386; *Burt* v. *Second Nat. Bank of Saginaw*, 241 Mich. 216, 223; 217 N. W. 71; *Allen Co.* v. *Edwards*, 29 Cal. App. 184, 186; 154 P. 1066; *Miller* v. *Neff's Adm'r.*, 33 W. Va. 197, 208; 10 S. E. 378; *Prater* v. *Frazier*, 11 Ark. 249, 265; *Gosney* v. *Costigan*, 326 Mo. 1215, 1229; 33 S. W. [2d] 947; *Tenbrook* v. *Brown*, 17 Ind. 410, 413; *Bennett* v. *Cook*, 28 S. C. 353, 363; 6 S. E. 28; *Graham* v. *Plotner*, 47 Ind. App. 462; 151 N. E. 735, 739.)

It will be obvious from the foregoing that the issue herein is determinable on any one of several grounds, all of which lead to the result of affirming the right of the respondent to the proceeds of these policies.

The authorities cited by the petitioners for a contrary result are not in point. *Strianese* v. *Met. Life Ins. Co.* (221 App. Div. 81); *Fink* v. *Fink* (171 N. Y. 616); *Matter of Schiffer* (135 Misc. 830); *Seavers* v. *Met. Life Ins. Co.* (132 id. 719); *Orcutt* v. *Modern Woodmen of America* (213 App. Div. 530), and *Schoenholz* v. *N. Y. Life Ins. Co.* (234 N. Y. 24) were all cases in which identified individuals were named as the particular payees of the respective policies and the insured attempted to divest their contingently vested rights, but not only failed in the performance of the acts requisite for that purpose, but omitted even the substantial performance which might have resulted in giving rights to the persons whom they desired to substitute, under the doctrine of such cases as *Luhrs* v. *Luhrs* (123 N. Y. 367); *Lahey* v. *Lahey* (174 id. 146) and *Hall* v. *Prudential Ins. Co.* (132 Misc. 162). While the policy in *Matter of Bongiovanni* (147 Misc. 830) was of the industrial type, neither the authorization for payment nor the policy itself were delivered to the respondent by the insured prior to her death, and, in fact, he never heard of the former prior to that event. It is, therefore, obvious that whereas the decedent in that case may at one time have had an intention to benefit the respondent by the proceeds of the policy, this intention was never consummated by any of the methods which have been demonstrated in the case at bar.

It follows that the claim of the petition must in all respects be denied.

Enter decree on notice.