CROWN POINT IRON COMPANY, Respondent, *v.* THE ÆTNA INSURANCE COMPANY, Appellant,

*N. Y. Supreme Court, Third Department, General Term, July 6, 1889.*

1. *Insurance. Cancellation of policy.*—Where the insured, through his agent, forwards his policy to the agent of the company, with the direct request that it be cancelled, and a suggestion that it be allowed a *pro rata* rebate of premium, the cancellation is effected, though the company has not accepted the policy nor repaid the premium.

2. *Same. When effected.*—The mailing of the policy by plaintiff's agent to the agent of the company for the purpose of cancellation, was a surrender of the policy, even though it did not reach such agent until after the destruction of the property by a fire.

3. *Same. Return of policy after fire.*—The return of the policy by the company's agent after the fire even with knowledge of its occurrence, did not give it vitality, nor create any liability for such previous loss.

Action brought to recover upon a policy of insurance. The defendant claimed that the policy had been surrendered and canceled.

The general manager, and assistant general manager of plaintiff, on July 25, 1866, examined the insured property and decided to reduce the insurance, and on July 28, the assistant sent the policy to the agent of the insurance company for cancellation. The insurance agent received the policy on July 29, and on that day the insured property was destroyed by fire. The next morning the insurance agent, with knowledge of the fire, returned the policy to plaintiff's agent.

Plaintiff recovered a judgment and from it defendant appeals.

*A. H. Sawyer,* for appellant.

*R. L. Hand* and *Waldo & McLaughlin*, for respondent.

LEARNED, P. J.—It is evident that the examination by Inman and Reed satisfied them that the plaintiff had more insurance than was needed on the charcoal, and made Inman decide to reduce it largely or to give it up altogether. The total amount was $14,000, and there is some indication that about $3,000 was considered to be sufficient. Certainly Inman testifies that they had to cancel some, and would cancel all, if they could do so on a full *pro rata* return. We cannot see then why Reed's act was not fully authorized, even without reference to such authority as he may have to act himself.

He did not return all the policies. There were twelve and he returned nine. Inman does not state that he gave any direction how many should be canceled. It must, therefore, had been left to Reed's judgment, who with Inman had examined the amount of charcoal remaining. And there is nothing in Inman's testimony which indicates that if a part only of the policies were to be cancelled, this must be done on a full *pro rata* return. In saying this we do not mean to imply that Reed's act would not have been binding on the plaintiff, even if he had returned all the policies in his letter to Page. He had been held out to the world as assistant general manager. He had procured policies for the plaintiff. He had general charge of business in the absence of Inman. And, though it may have been in the the power of Inman to direct Reed as to what insurance to procure, yet the evidence shows that the business as to the insurance companies was done by Reed.

Taking then Reed's acts as the acts of the plaintiff in this respect, we come to his letter to Page: " I send you insurance polices on charcoal for cancellation. Our stock is nearly used up." Here we have a direct request that the policies be cancelled, with the reason therefor, viz., that the plaintiff had not as much property, as the insurance. They,

therefore, wished to save something of the premium which they had paid. This was then a request for something which would benefit plaintiff. The next sentence is not a condition of the surrender; but is an asking for good terms. " We should be allowed for the unexpired time *pro rata* on amount paid." That is the plaintiff thinks it should be allowed *pro rata*. It appears that no cancelling policies there is sometimes allowed, a " short rate," and sometimes " a ratable proportion." By the condition in defendant's policy, when the insurance is terminated at the request of the insured the company retains short rates for the time the policy has been in force, when by the company, it refunds ratably.

The meaning seems to be that if the insured terminates the policy he pays for the time he has been insured, at the rate usual for that short time. The plaintiff only desired to pay only *pro rata*. Still that was not made a condition of the surrender. That had been acted upon by Reed in sending the policies.

Aside from the condition in these policies, it is provided by section 3, chapter 110, Laws 1880, that any insurance company shall, at the request of the insured, cancel any policy, " and shall return to said party, or his legal representatives, the amount of premium paid, less the customary short-rate premium for the expired time." Therefore, on thus surrendering the policies, with the request for cancellation, the plaintiff, if payment was refused, would have a right of action for the premium paid, less the short rate for expired time. The plaintiff hoped that the defendant would do better than this, but the surrender of the Ætna policy was complete. Nothing remained to be done by plaintiff. The defendant owed the plaintiff the amount provided by statute, and might voluntarily pay more, but whether the defendant paid that or not, the plaintiff had done in respect to the Ætna Company all that was needed. It had given up its policy to a person authorized to cancel, and had re-

quested cancellation.  The policy was no longer in plaint-iff's possession.  Train *v.* Holland Purch.  Ins. Co., 62 N. Y. 508.

The plaintiff urges that, in order to effect a cancellation, the insurance company must accept the policy and, perhaps, must repay the premium.  But this cannot be so.  The plaintiff had paid the premium.  In consideration of that payment the defendant had agreed to insure plaintiff for a certain time.  Can it be that plaintiff could not, by some means or other, give up and surrender the benefit it had thus paid for ?  Suppose, after a person had obtained his policy, he should be satisfied that the company was insolvent, could he not give up or release this policy, so as to be able to procure one from a solvent company?  Or could the company, by refusing to accept his surrender, prevent his obtaining better insurance ?  Certainly not.  Whether the company, without some condition in the policy or some statute, would be obliged to return anything, is a different question.

The plaintiff cites cases in which it has been held that if an insurance company would cancel a policy, they must not only give notice, but must return the premium or some proper part.  Griffey *v.* N. Y. Central Insurance Company, 100 N. Y. 417.  But the position of the company is very different.  It had bound itself to do certain acts for the insured, and has received the consideration.  It can relieve itself from the liability only by actually refunding the amount provided for, and not by promising to do so.  If it desires to take away something from the insured, it must perform the condition ; but the insured, may give up what he possesses, even if the insurance company never pays back what it owes him therefor.

We think, then that the plaintiff had actually surrendered the Ætna policy on its receipt by Page, who had authority to cancel.  Hence, no subsequent re-delivery by Page to Reed after the fire, and with knowledge of the fire,

could make the policy valid. Such re-delivery was a wrongful and fraudulent act towards the defendant. They could have hardly thought that it would change the rights of the plaintiff and the defendant, unless by its cancelling what had been actually done. There was no liability of the defendant on the policy at the time of the fire except to return the proper part of the premium, and there can be no recovery in this action against the Ætna Company.

The fact as to the other companies are similar. Whether we regard Page as the agent of plaintiff to send the policies to Little, or as Little's agent to receive them, does not seem to be very material. They were on their way in regular course of transmission by the plaintiff's order. The referee does not find whether they reached Little at nine o'clock on the evening of the 29th, or on the morning of the 30th. At any rate, between 9 and 10 A. M. of the 30th, Little received the package and read the letter, and laid it aside to be answered. We think that the language of Page's letter requesting a high rebate is not a condition of the surrender. The surrender was absolute. Page, considered as plaintiff's agent (the most favorable view for plaintiff), mailed, by plaintiff's request, the package the afternoon of July 29th, and before the fire.

By that act plaintiff parted with the control of the policies and did so for the purpose of obtaining its cancellation. That act was plaintiff's surrender of the policies; because it was the decisive act which put the policies intentionally out of plaintiff's possession. And even though they did not reach Little until after the fire, the surrender had taken effect before. Atlantic Insurance Company *v.* Goodhall, 35 N. H. 328. The plaintiff had decided that it wished these policies cancelled, and it at once did all it reasonably could to effect that result. It had the right to treat its act as a surrender of the policies; and so had the insurance companies.

If this be so, then clearly the return of these policies by

Little to Page could not give them vitality. A fraud was practiced upon Little, and on the companies, through him, by asking the return of the policies and concealing the fact of the fire. The property which they were intended to insure had already been destroyed or partially destroyed. Even a new policy issued in ignorance of that fact would have been invalid; and in any case could have created no liability for such previous loss.

The judgment in favor of the plaintiff in the above-entitled action, and the similar judgments in the five other actions against other companies are reversed, new trials granted, referee discharged, costs to abide event.

LANDON and INGALLS, JJ., concur.