ELIZA A. MARTIN, APPELLANT, v. MANUFACTURERS' ACCIDENT INDEMNITY COMPANY, RESPONDENT.

60h 535
48ad637

*Benefit insurance companies — surrender of a certificate — the consent of the beneficiary is necessary — the grounds of a motion for a new trial must appear in the appeal papers.*

A benefit insurance corporation issued to a party assured a certificate, by which it agreed to pay the assured a certain sum of money in case of disability, and to pay to the wife a sum, to be realized upon an assessment, in case the husband's death resulted from bodily injuries by external, violent and accidental means (which injuries alone occasioned such death within ninety days from the time they occurred).

The assured injured himself on the eighth day of April and again on the twenty-seventh day of April. He died on the tenth day of the following May. His policy or certificate was paid to June ninth, and he was notified by the corporation to that effect on May ninth. On the thirteenth day of April an agent of the company settled with the assured for the accident of April eighth, and the assured at that time, as the corporation alleged and as a receipt taken at the time stated, surrendered his certificate, although there was no actual surrender of possession of the certificate.

*Held*, that such a receipt might be explained and be shown to be without consideration so far as the surrender was concerned.

That as there was no physical surrender of the certificate, and as the corporation subsequently acknowledged its validity by the notice of May ninth, and as the proof upon the question of surrender was conflicting, the wife on the trial of an action brought by her to recover the sum made payable to her by the certificate in case of her husband's death, should have been allowed to go to the jury upon the question whether there was an intention to surrender the policy and as to whether it was, in fact, surrendered, and that the case was not a proper one for the granting of a nonsuit.

That as the certificate was payable to the wife she had a vested interest in such covenant of payment, and her consent to such surrender was necessary.

Where the grounds of a motion for a new trial nowhere appear, the denial of the motion cannot be reviewed, and an appeal taken from the order denying it must be dismissed.

APPEAL by the plaintiff Eliza A. Martin from a judgment entered in the clerk's office of Broome county on the 20th day of January, 1891, in favor of the defendant, and also from an order entered in said office on the 5th day of December, 1890, denying her motion for a new trial after a trial at the Broome Circuit before the court and a jury.

The complaint upon a certificate or policy of insurance issued by the defendant on the 9th day of November, 1888, alleged the issuing by the Manufacturers' Accident Indemnity Company, the defendant, of the certificate or policy "by which they undertook and agreed, among other things, to pay to the plaintiff the sum realized upon an assessment made in accordance with the provisions of its by-laws, not exceeding $5,000, within ninety days after the filing with said defendant due proof that said William A. Martin has sustained bodily injuries effected through external, violent and accidental means, which injuries alone occasioned his death within ninety days from the happening thereof." The answer admitted the issuing "of the certificate of membership or policy of insurance;" also admitted that William A. Martin died upon the 10th day of May, 1889, and that an assessment would "exceed $5,000," and that no part of the alleged sum of $5,000 has been paid. The answer further alleges that on the 8th day of April, 1889, the assured received injuries upon the thumb of his left hand from a hammer, and also alleges "that claim was made by said assured for weekly indemnity under the provisions of said policy, on or about the 9th day of April, 1889, and that thereafter, and on or about the 13th day of April, 1889, and while said assured was not disabled within said policy so as to be entitled to any weekly indemnity, this defendant duly agreed to and with the said assured for a good and valuable consideraton, viz.: $25, then and there paid to said assured, that said sum would be and it was received in full satisfaction and final settlement of any and all claims said assured had or might have against this defendant for loss resulting from injuries received by said assured on said 8th day of April, 1889, for and in consideration of said sum of $25 said assured then and there agreed to, and did surrender, satisfy and cancel said policy of insurance set out in the complaint, by reason of which said policy was surrendered, canceled and satisfied, and ceased to be an obligation or policy against this defendant, all of which is set up as a defense herein." The nonsuit seems to have been put upon the ground "that the undisputed evidence shows the cancellation of this policy and the company was not liable." Plaintiff requested to go to the jury upon the question as to whether "it was the intent of the parties, upon giving that receipt of April 13th, to surrender the policy, and whether, in fact,

the policy was surrendered; whether, in fact, it was at the time of Mr. Martin's death a valid and subsisting contract of insurance between the beneficiary and the company." An exception was taken to the holding by the court. In the application made by the deceased on the 8th of November, 1888, and in the ninth subdivision thereof were inserted these words: " Write certificate payable in case of death by accident under provisions of this certificate to Eliza A. Martin, whose relationship to me is that of my wife." The agent of the defendant on the eighth of November executed a receipt to the deceased for five dollars, " being payment in advance of the membership fee upon the certificate so applied for." The secretary of the defendant executed a receipt on December 12, 1888, for two dollars, " in payment of premium due December 9th, 1888 ;" February 9, 1889, the secretary executed a receipt for two dollars " in payment of premium due February 9th, 1889 ;" and the secretary executed a receipt April 9, 1889, for two dollars " in payment of premium due April 9th, 1889." An " official notice " from the officers of the Manufacturers' Accident Indemnity Company, bearing date May 9, 1889, signed by the secretary, was issued and sent to the assured, which contained the following words, viz.: "Your insurance stands on our books as paid to June 9, 1889 ; your next bi-monthly premium of two dollars is now due ; time of payment expires June 9th, 1889." The "official notice," with other papers accompanying it from the defendant, were addressed to the assured, and sent through the mail and received at his residence on the day of his death. On the 27th day of April, 1889, the deceased injured the second finger of his right hand between the first and second joint by taking out a small piece of flesh about the size of a pea ; inflammation set in and blood poisoning ensued, resulting in his death on May 10, 1889 ; and it is claimed in behalf of the plaintiff that death resulted from the injuries received on the twenty-seventh of April, and that by reason thereof the defendant became liable to pay the plaintiff the sum of $5,000 upon the policy. On the 2d of May, 1889, the deceased requested his daughter to write, for and in his behalf, a notice of the injury that he had received on the twenty-seventh of April, and send the same to the defendant, which was done, and the defendant received the same in due course of

mail and retained it without objection or inquiry communicated to the deceased. On the fourteenth of May the plaintiff caused notice of the death to be sent to the defendant, with a request for usual blanks to make up proofs of loss, which notice was received by the defendant, but no blanks were furnished, and the plaintiff on the twenty-ninth of May made up and delivered to the defendant proofs of loss, which were "returned to plaintiff by defendant next day after receipt on the ground stated that the policy in question had been canceled and was not in force."

*Carver, Deyo & Jenkins,* for the appellant.

*A. & A. W. Cumming,* for the respondent.

HARDIN, P. J. :

Plaintiff is entitled to have the most favorable inferences deducible from the evidence, and conflicts in the evidence resolved in her favor while reviewing a motion for a nonsuit. (*Weil* v. *D. D., E. B. and B. R. R. Co.,* 119 N. Y., 153.) Whether the death ensued from injuries covered by the provisions of the policy, upon the evidence produced, was a question for the jury to determine.

Apparently the critical and important question in the case arises upon the effect to be given to the paper signed by the deceased on the 13th day of April, 1889, which was in the following words :

"Received from the Manufacturers' Accident Indemnity Co., of Geneva, N. Y., the sum of *twenty-five dollars* ($25), being in full satisfaction and final settlement of any and all claim I now have or may have against said company for loss resulting from injuries received on the 8 day of *April,* A. D. 1889, under my policy No. 12157, which is hereby surrendered.

" Dated at *Binghamton,* in the State of *New York,* this 13 day of *April,* A. D. 1889.

"W. A. MARTIN, *Claimant.*

"*Now* 28 *Lewis st., Binghamton, N. Y.* Residence.

" C. L. KING, *Witness.*"

When the paper was executed it was a printed blank, except the words and figures underscored.

King, the general agent of the defendant, who witnesses the

paper, was called as a witness in behalf of the defendant and, against the objection and exception of the plaintiff, he was permitted to give a conversation held with the deceased on the thirteenth of April, when the paper was executed. It appears by that conversation that the deceased and the witness held a discussion as to the extent of the injuries to the thumb of the deceased, and as to what sum would be a suitable compensation therefor, and, after an intimation on the part of the witness that he would give ten or fifteen dollars, deceased declared he would not take it, and the witness King finally testifies as follows: "I says to him finally, in substance, Mr. Martin, what will you take and settle this matter, tell me? I am here with authority to settle with you. He says, I will take one week, that is $25. I says yes; I says, to end all this discussion I will pay you, and drew out this application, this receipt." The witness testifies further that he gave his check for twenty-five dollars, and that the deceased signed the paper, and the witness adds, the deceased "looked at it and says, what does that mean by surrendering my policy? I says it is the usual course when we settle with a man before he recovers from an injury, and your reinstatement depends on the secretary; that is nothing I have anything to do with. He signed the receipt and I gave him my check and I left the office; the whole talk I can't give; I was there perhaps an hour and a half." The witness further testified that in answer to some question put to him by the deceased, in regard to the surrender of the policy, that he replied, "I says it is customary to send that to the company with the receipt; it is not here, I didn't consider it important and did not send for it, and did not get it. * * * Mr. Martin said the policy wasn't there; I says this surrender is sufficient, and without going after the policy or getting it."

The defendant called one Demeree as a witness, who was present at a portion of the interview which was had between King and the deceased, and he testifies: "Mr. King didn't say that he would pay ten or fifteen dollars, nor make any offer while I was there. Mr. Martin didn't say that he would call it one week while I was there. Neither Mr. Martin nor Mr. King made any offer while I was there. I saw no check given nor receipt signed. * * * When I left the Appleton office I left Mr. Martin and Mr. King negotiating and talking about the matter"

The plaintiff called Daniel E. Comstock, who testified to a conversation he had held with King, as to which conversation the witness says: "Mr. King says, I heard Mr. Martin received an accident, and I came right around and have settled for a weekly indemnity, and have paid him a check for $25, and he requested Mr. Martin to show me the check which he did. I think it was Mr. King's individual check for that amount, and the settlement seemed very satisfactory, and there was nothing said about the cancellation of the policy."

We think the evidence warranted an inference that thè twenty-five dollars was paid in satisfaction of the loss sustained by the injuries of April eighth, and that the evidence warrants an inference or finding that the payment was made exclusively for such purpose, and that no part of the sum of twenty-five dollars was paid to reimburse the deceased for the premium paid theretofore to the defendant, or for the purpose of obtaining a surrender of the policy; indeed, the language of the receipt is that the twenty-five dollars is in satisfaction of " any and all claim I now have or may have against said company for loss resulting from injuries received on the 8th day of April, A. D. 1889." (*Ramsden* v. *Hylton*, 2 Vesey, Sr., 310.)

In *Van Nest* v. *Talmage* (17 Abb. Pr., 99), it was held that " A receipt or release may be avoided by proof that it was obtained without consideration or by misrepresentation, or that it has been rescinded by agreement."

If the receipt is construed in the light of the evidence now mentioned, and the facts and circumstances surrounding the parties at the time of the execution thereof, the conclusion is reasonable that the money paid by the defendant was for the purpose of satisfying the claim or liability, which arose by reason of the injuries of the eighth of April. We think the words " hereby surrendered " were inserted without any consideration being paid therefor. (*Brick* v. *Campbell*, 122 N. Y., 337.) There was no physical surrender of the policy, the same having been retained by the assured or the beneficiary named therein, and held by them or one of them at the time of the death.

This case is distinguishable from *Train* v. *Holland Purchase Insurance Company* (62 N. Y., 602), as in that case there was an actual delivery of the policy; a physical surrender of it by the

party solely interested therein to the agent, "and the acceptance of it by him as agent of the Andes Company, with the intention on the part of both that it should no longer be a contract between the plaintiff and the company," and that by a party solely interested in the ownership of the policy. We also think this case is distinguishable from *Crown Point Iron Company* v. *Ætna Insurance Company* (53 Hun, 227), as in that case the plaintiff had actually surrendered the policies, and, by its decisive act, "put the policies intentionally out of the plaintiff's possession," and no question was made in that case but what the plaintiff was the sole owner of the policy and the sole party interested therein.

Again, by the application that was made to the defendant, it was expressly requested to make the certificate or policy payable in case of death by accident, under the provisions of the certificate, to Eliza A. Martin. By the terms of the policy it was provided that if death should be "effected through external, violent and accidental means * * * this company does covenant, promise and agree to pay to Eliza A. Martin, wife, if surviving, if not to the legal representative of the member, the sum of $5,000 from the benefit fund of the company at the time of said death." On the thirteenth of April the policy was in life, and the premium thereon had been paid sufficient to keep it alive until another payment or premium should become due and payable on June ninth. The beneficiary, therefore, had an interest in the covenant of the company, which had been paid for. (*Lockwood* v. *Bishop*, 51 How., 224.) It is not claimed that she ever assented to a surrender of the same, or that she, in any manner, canceled her interest in the policy in question; nor does the evidence show any act on her part which can be construed to operate as a surrender of her interest in the policy; besides, on the ninth of May the defendant, when it issued its "official notice," treated the policy as valid and binding. (*Matter of Booth*, 11 Abb. N. C., 145; Cook on Life Ins., 138, and cases cited.)

Chase, the secretary of the company, who, by evidence, is shown to be the principal manager of the company, it must be assumed had either signed or caused to be signed the "official notice" which was used, and it must be assumed that he was acting within the scope of his authority when he sent or caused to be sent the "official

notice " to the assured. According to the testimony of King, the secretary had the power to cause a reinstatement of a member even after a valid surrender of a policy. In article 2 of the by-laws it is provided that if a member shall fail to remit the amount of the assessment within the time specified in the notification, he " may be reinstated by the secretary under such conditions as he may impose." It seems that the object of this company is to " collect and accumulate a fund to be held in use for the mutual benefit and protection of its members or their beneficiaries ; " such is the declared object in article 1 of the by-laws. It would seem that the defendant not only covenanted to pay such sum of money as the assessment would yield up to the extent of $5,000, but it undertook to act as trustee, not only for the members but for the beneficiaries mentioned in its policies. This circumstance is not to be overlooked in considering the interest which the plaintiff had in the policy on the thirteenth of April.

Plaintiff has placed her right to recovery by reason of the injury of April twenty-seventh, and not by reason of the injury of April eighth. Whether the death resulted from the injury of April eighth or whether that contributed to the death were questions which were not determined by the learned judge at the circuit, and are not directly brought in review ; and probably when this case shall be tried again questions in that regard will be for the jury to determine. (*Peck* v. *Equitable Accident Association*, 52 Hun, 259.) We think the plaintiff's case is distinguishable from *Bacon* v. *United States Mutual Accident Association* (123 N. Y., 304), as in that case it appeared the death of the insured was caused by malignant pustule, and it was, therefore, held that the insured died from a disease within the meaning of the policy.

Neither the notice of motion for a new trial made upon the judge's minutes nor the order entered thereon specify any grounds ; according to the well-settled practice of this court, the same cannot, therefore, be reviewed, and the appeal, therefore, must be dismissed. (*Hinman* v. *Stillwell*, 34 Hun, 178.)

MARTIN and MERWIN, JJ., concurred.

Appeal from the order dismissed. Judgment reversed and a new trial ordered, with costs to abide the event.