CHARLES F. HOFFERBERTH, Appellant, *v.* ALFRED W. DUCKETT, Respondent.

First Department, December 15, 1916.

Equitable assignment by corporation to its president — action to recover moneys collected and received for use and benefit of plaintiff — pleading — failure to allege assignment to plaintiff — evidence establishing equitable assignment — form of such assignment — assignment of moneys to be collected — enforcement in equity — evidence as to oral assignment.

In an action to recover moneys alleged to have been collected and received by the defendant for the use and benefit of the plaintiff, it appeared that the plaintiff, the president and director of a corporation, through the defendant, a shipbroker, had chartered a steamship; that thereafter the plaintiff had personally advanced a large amount of money to his company and had become personally liable for the amount payable to the owner for the hire of the steamer, pursuant to a verbal agreement with the directors that the moneys collected from the trips of the steamer in excess of the expenses should be turned over to him; that thereafter he by letter authorized the defendant to make collections and remit to him; that subsequently the board of directors unanimously approved the action of the plaintiff in advancing the moneys and adopted a resolution providing " that any moneys collected from any outstanding indebtedness be applied in payment of moneys borrowed by Mr. Hofferberth and to be retained by him." The outstanding claims were then in the hands of the defendant, under written authority to collect and remit to the plaintiff.

*Held*, that the contention of the defendant that the complaint was properly dismissed for the reason that the moneys in his possession were collected on accounts owing to the plaintiff's corporation, and that no assignment thereof was pleaded, was properly overruled, because in an action for money had and received to the use of the plaintiff, it was unnecessary for the plaintiff to allege the source of his title or the facts or circumstances out of which the indebtedness to him arose;

That the evidence sufficiently establishes an equitable assignment to the plaintiff.

An assignment of moneys to be collected is valid, and takes effect upon the fund when collected or received.

No particular form of words is necessary to constitute an equitable assignment.

A parol assignment by the board of directors of a business corporation, when acquiesced in and ratified by the corporation, will be enforced by a court of equity.

After the plaintiff had testified, and introduced the resolution of the board of directors, testimony of directors of the company as to conversations between them and the plaintiff prior to the adoption of said resolution tending to show an oral assignment to the plaintiff was admissible.

APPEAL by the plaintiff, Charles F. Hofferberth, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of February, 1914, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*James W. Hyde,* for the appellant.

*Max L. Schallek* [*Samuel Strasbourger,* with him on the brief], for the respondent.

LAUGHLIN, J.:

This is an action to recover moneys alleged to have been collected and received by the defendant for the use and benefit of the plaintiff.

The plaintiff was the president and a director of the Hofferberth-Troy Company which was engaged in the lumber business in Honduras. The defendant was doing business under the name of A. W. Duckett & Co., as a shipbroker. In the month of March, 1907, the Hofferberth-Troy Company, by the plaintiff as its president, through the defendant, as a broker or agent for the owners, chartered the steamship *Cecilia* to bring a cargo of mahogany logs from Honduras to New York. One Thomas W. Troy was a director and the vice-president of the Hofferbeth-Troy Company, and its general manager in Honduras until November, 1907. Troy resigned as a director July 8, 1908. On the first return voyage of the steamer in the spring of 1907 Troy stopped it at Miami, Fla., and went on a spree, and shot and killed a man, and was taken into custody; and the steamer came to New York with practically no cargo.

The plaintiff had personally advanced a large amount of money to his company for the voyages of the steamer, and had become personally liable for the amount payable to the owner

for the hire of the steamer under the original charter party, pursuant to a verbal agreement with the directors that the moneys collected from the trips of the steamer in excess of the expenses should be turned over to him. On the return of the steamer from the first voyage the plaintiff employed the defendant to operate the steamer for himself and for his company; and he notified the defendant both verbally and in writing of the arrangement he had with the directors, by which he was to receive the moneys collected from the trips of the steamer in excess of the expenses. On the 4th of February, 1908, the charter party was duly canceled by the owner on account of default in payment of the hire in advance. There were then some outstanding claims for freight earned by the steamer under the management of the defendant, and he by letter requested a power of attorney authorizing him to collect by legal proceedings or to settle them. On the 21st of February, 1908, pursuant to said request, a letter was sent to the defendant, signed in the name of the Hofferberth-Troy Company by the plaintiff as its president, stating that inasmuch as the defendant had theretofore taken charge of chartering and collecting the freights of the steamer, he was further authorized to take such action as he might deem necessary to collect and force payment of accounts arising from the chartering of the steamer *then due to the Hofferberth-Troy Company and directing the defendant to remit direct to the plaintiff individually any moneys he might receive.*

At a meeting of the board of directors of the Hofferberth-Troy Company held on the 14th of October, 1908, resolutions were unanimously duly adopted approving, ratifying and confirming the action of the plaintiff in advancing the sum of $1,661.70 for the payment of a note given by the company which it was unable to pay and on which an action was threatened, approving, ratifying and confirming the action of the plaintiff in advancing money to pay for the hire of said steamer and to pay for merchandise and goods shipped on the steamer, payment for which had been guaranteed by him, and in advancing other moneys for the necessary operations of the company, which amount, so advanced, together with interest thereon to October 1, 1908, it was recited, aggregated $23,047.53

over and above the amounts received by the plaintiff from the sale of lumber and timber and credited to the company; and it was further unanimously duly resolved by the board of directors that the plaintiff, in order to secure him for his devotion to the interests of the company, and for the moneys he was compelled to borrow to keep the company running, and moneys advanced to defray the necessary expenses, should have a lien on the bonds of the Honduras Ice Company, subject to a prior lien; and "that any moneys collected from any outstanding indebtedness be applied in payment of money borrowed by Mr. Hofferberth and to be retained by him." The outstanding claims were then in the hands of the defendant under written authority to collect and with directions to remit to plaintiff and presumably these facts were known to the directors when said resolutions were adopted.

The defendant, pursuant to said verbal and written notifications, had recognized the plaintiff's right to receive the moneys earned by the steamer in excess of the expenses incurred by the defendant in operating the same; and from time to time had remitted the surplus moneys collected from the operation of the steamer to the plaintiff individually, and promised so to remit the moneys to recover for which this action is brought. After so promising and on the 3d day of May, 1909, which was prior to the commencement of the action, the defendant by a letter addressed to the plaintiff individually admitted that he had succeeded in collecting two claims arising from the operation of the steamer *Cecelia*, one for $200 and one for $1,100; and had placed those amounts to plaintiff's credit "in account," but he therein claimed fifty per centum of the amounts collected for his time, services and expenses in making the collections; and also made a claim for $893.69 for moneys advanced by him to said Troy personally. The only basis stated for that claim against the plaintiff was his assertions that Troy had gone to Honduras under a contract with the plaintiff and another, and had induced the defendant to advance said sum on Troy's agreement that he would reimburse the defendant from moneys which he expected to receive from the plaintiff under said contract; that the plaintiff had failed to perform said contract with Troy, and that Troy had used the money, so

advanced to him, for the account of the Hofferberth-Troy Company. The defendant with that letter inclosed an account purporting to be between him and the Hofferberth-Troy Company in which, under date of August 1, 1908, he charged himself with a balance of account of $182.15 and the $1,300 so collected on the two accounts; and credited himself with the amount so claimed to have been advanced to Troy and with $750 for services, time and expenses, leaving a balance claimed to be due to him of $161.54. It thus appears that the defendant admitted having received on account of the operation of the steamer, over and above the expenses thereof, the sum of $1,482.15, which he had neither paid to the plaintiff nor to the company.

The defendant neither pleaded nor claimed that the company claimed this fund. The Statute of Limitations has long since run against any action in favor of the company therefor. The defendant, however, claims that these moneys belong to the company and that he has offsets as against the company which, of course, are not available in this action.

This appeal does not present for decision any question with respect to the defendant's claim for a credit either on account of services or expenses in making the collections or on account of the moneys claimed to have been advanced to Troy; for no proof of such services or expenses was made; and on the defendant's statement of the transaction between him and Troy, contained in his letter, manifestly he had no valid claim for reimbursement from the funds so in his hands.

The learned counsel for the respondent contends that the complaint was properly dismissed for the reason that the moneys in the hands of his client were collected on accounts owing to the Hofferberth-Troy Company; and that no assignment thereof, either legal or equitable, was pleaded. That contention was made on the trial and overruled on the ground that in an action for money had and received to the use of the plaintiff it is unnecessary for the plaintiff to allege the source of his title or the facts or circumstances out of which the indebtedness to him arose. That was the rule at common law, and I think it still obtains. (See *National Trust Co.* v. *Gleason,* 77 N. Y. 400; *Chapman* v. *Forbes,* 123 id. 532, 537;

*Roberts* v. *Ely,* 113 id. 128; *People* v. *Ingersoll,* 58 id. 1.) On the plaintiff's theory of the action his company never owned the cause of action which he is here prosecuting. The moneys had not been collected by defendant then and he was not accountable therefor to the company, and before the collections were made the company had for a valuable consideration, in effect, assigned the moneys when collected by the defendant, as agent, to the plaintiff. Such an assignment is valid and takes effect upon the fund or property when collected or received. (*Williams* v. *Ingersoll,* 89 N. Y. 508.)

The learned counsel for the appellant contends that the evidence which was offered and received in behalf of his client established an equitable assignment to him of the surplus moneys received from the operation of the steamer over and above the expenses which the defendant was authorized to deduct; and he further contends that if the evidence so received was insufficient for that purpose the court erred in excluding other competent evidence offered to show an equitable assignment. These contentions will now be considered separately.

*First.* I am of opinion that the evidence sufficiently shows an equitable assignment. So far as appears the Hofferberth-Troy Company is asserting no claim to these moneys; and it acquiesced in, if it did not formally approve, the verbal agreement made between the members of its board of directors and the plaintiff by which all moneys collected from the operation of the steamer in excess of expenses should be turned over to him, and in the written direction to the defendant to transmit such moneys direct to the plaintiff individually. Its board of directors by formal resolution, reciting adequate consideration, directed that all moneys collected from any outstanding indebtedness to the company should be applied in payment of the money borrowed for the company by the plaintiff *and should be retained by him.* The resolution of the board of directors of the company, which was adopted long after the written direction to the defendant to remit the moneys to the plaintiff, should be construed in connection with such written direction, and means, I think, that those moneys which the company had theretofore directed the defendant to pay over to the plaintiff should be retained by the

First Department, December, 1916.     [Vol. 175.

plaintiff and applied on the company's indebtedness to him. It is essential that there shall be a consideration for an equitable assignment; but there was abundant consideration here. It is well settled that either a written or parol equitable assignment of a debt, claim or chose in action, if founded on a good consideration, is valid and enforcible; and that no particular form of words is necessary to constitute such an assignment but that any words will suffice which show an intention to transfer the debt, claim or chose in action. (*Williams* v. *Ingersoll,* 89 N. Y. 508; *White* v. *Hoyt,* 73 id. 505; *Brill* v. *Tuttle,* 81 id. 454; *Fairbanks* v. *Sargent,* 117 id. 320; *York* v. *Conde,* 61 Hun, 26; *Rupp* v. *Blanchard,* 34 Barb. 627, 629; *Muir* v. *Schenck,* 3 Hill, 228.) There can be no doubt but that a parol assignment can be made by the members of a board of directors of a business corporation, for a sufficient consideration moving to it, which, when acquiesced in as is shown here, by the corporation, and in effect ratified, for the ratification should not be confined to the mere advancement of the money, but should be held to embrace the arrangement under which the advances were made, will be enforced by a court of equity. (See *Melledge* v. *Boston Iron Co.,* 5 Cush. 158; *Groh's Sons* v. *Groh,* 80 App. Div. 85.) The point presented for decision is, did the company intend that these moneys, when collected, should belong to the plaintiff, or did it merely promise to reimburse him when it collected the accounts?

I am of opinion that the plaintiff's company intended that these moneys as soon as collected should belong to him. If there be any ambiguity with respect to the formal action of the board of directors it should be resolved in the light of the former written direction to the defendant to pay the moneys over to the plaintiff as he had done in other instances. There is no better rule for resolving any doubt with respect to what was intended than to show that what was done and acquiesced in was what was intended. (See *Williams* v. *Ingersoll, supra; Nicoll* v. *Sands,* 131 N. Y. 19, 24; *Insurance Co.* v. *Dutcher,* 95 U. S. 269.) The defendant understood the agreement as the company and plaintiff intended, as is shown by his prior action in accounting to the plaintiff, and by his final letter to the plaintiff, to which reference has been made, in which he

credited plaintiff with the moneys but asserted offsets. The undertaking of the Hofferberth-Troy Company with the plaintiff was not to reimburse him when these moneys were collected, but that the moneys should be his when collected. The plaintiff does not claim that *the accounts* were assigned to him, although that was urged on the trial. He now contends that it was intended that the moneys when collected should belong to him. The claims, therefore, were to be collected by the defendant as the agent of the company; but he collected them with full knowledge that the surplus moneys when collected by him belonged to the plaintiff. It was, therefore, his duty, on receiving notice of this agreement between the plaintiff and the board of directors, and the formal written direction, to pay the money over to the plaintiff. (See *Brill* v. *Tuttle*, 81 N. Y. 454.) In effect the claims in the hands of defendant for collection were impressed with a trust in favor of plaintiff which made it the duty of the defendant to pay over to the plaintiff the surplus of the moneys collected after deducting the expenses of operating the steamer. (*Matter of Carpenter*, 131 N. Y. 86; *Hoffman House* v. *Foote*, 172 id. 348, 355.)

*Second.* No question asked of the plaintiff, as a witness for himself, with respect to his agreement or arrangement with the board of directors of his company was excluded; but after he had testified and introduced the resolution of the board of directors, the material parts of which have been stated, he called two directors of the company, and questioned them for the purpose of showing that prior to the adoption of said resolution of the board of directors there were conversations between the members of the board of directors and the plaintiff, by which it was understood and agreed that the plaintiff was to advance money for the running expenses of the company and that the freights earned by the steamer were to be paid to him; and that he was to have the right to collect the freight money; and that there was in effect an oral assignment to him of the claims for moneys earned by the steamer. Counsel for the plaintiff contended, in support of the evidence thus offered, that it was the intention of the board of directors in adopting the resolution to approve the oral agreement, arrangement and assignment theretofore made between the members of the board

and the plaintiff. All questions on this subject, calling for conversations between the directors themselves and between them and the plaintiff, concerning these claims and the collection thereof, and with respect to who was to collect them and retain the money, were objected to and the objections were sustained; and the plaintiff excepted.

I am of opinion that the evidence so excluded was competent and should have been received. If it had been received it might have been more than cumlative and might have shown more fully than plaintiff's testimony that there was a verbal understanding and agreement between the plaintiff and the directors by which he was to advance the money necessary for the running expenses of the company, and in consideration therefor was to collect and apply on account of such advances the moneys earned by the steamer. If that had been shown it could be argued with greater force that the effect of the resolutions was to ratify that arrangement; for although the resolutions contain no express recital of such an agreement they expressly ratify plaintiff's action in retaining and crediting, on account of his advances, moneys received from the sale of lumber and timber; and the resolution with respect to the application, in payment of money borrowed by the plaintiff, of any moneys collected from outstanding indebtedness, and with respect to such moneys being retained by him, which is somewhat indefinite if not ambiguous, would have thereby been rendered clear.

It follows that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, PAGE and DAVIS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.