In the Matter of the Judicial Settlement of the Account of Proceedings of MICHAEL A. BUSCH and Another, as Temporary Administrators of and as Executors under the Last Will and Testament of MOISE GEISMANN, Deceased.

Surrogate's Court, Bronx County, March 30, 1929.

*Charles Stein,* for the executors.

*Cadwalader, Wickersham & Taft,* for Fannie Joseph and others.

*William Klingenstein,* for Celestin Geismann.

*Henry Escher,* for Sarah Samuel and others.

*Bernard J. Vincent,* for Union Indemnity Company.

*Benjamin A. Hartstein,* for Leopold Geismann.

SCHULZ, S. Pursuant to a stipulation entered into by all of the parties, except such as have filed objections, it was agreed that the supplemental and amended account of the petitioners covering the period from February 27, 1922, to May 10, 1928, be judicially settled and allowed as filed, subject to certain adjustments as therein more particularly set forth.

The objections filed on behalf of Lucie and Robert Samuel and those of the Union Indemnity Company have been withdrawn. There remain, however, those interposed by Leopold Geismann, to the effect that the petitioners in their account have failed to provide for the payment of interest which he claims is due him by virtue of a certain agreement entered into by himself and one Solomon Samuel, a specific and general legatee and one of the residuary legatees.

The agreement referred to provided as follows:

(a) That Solomon Samuel for himself and also on behalf of Fannie Joseph, another such legatee, for whom he claimed to be authorized to act, " jointly and severally " agreed to pay to Leopold Geismann the sum of $10,000.

(b) That acting for himself and the said Fannie Joseph, and also for one Celestin Geismann, another such legatee, the said Solomon Samuel " jointly and severally " agreed to pay to the said Leopold Geismann the further sum of $4,000.

(c) That the said Solomon Samuel guaranteed the payment of a further sum of $5,000 by Celestin Geismann to Leopold Geismann.

(d) That the foregoing amounts were to be payable to Leopold Geismann, and consent was given to the executors to pay the same from such legacies as might be due to the said Solomon Samuel, Celestin Geismann and Fannie Joseph.

Whether or not Leopold Geismann is entitled to interest depends upon the intention of the parties as to the time when the payments referred to in the agreements were to be made. I am satisfied that it was intended that they be made out of the shares of the respective parties when their legacies were due. The legacies were payable one year after the issuance of letters, and from that time on, the general legacies earned interest and the residuary legatees were entitled to income accruing on the residuary estate. (Surrogate's Court Act, § 218; *Matter of Rutherfurd*, 196 N. Y. 311; *Matter of McGowan*, 124 id. 526.) Hence, it is fair to assume that the parties intended that the amounts which were to be paid out of such legacies also should bear interest from the same date.

The fact that the will provided that the proceeds of the sale of the decedent's real estate were to be used in paying cash legacies, does not of itself show an intention on the part of the testator that the usual rule as to interest was not to be followed. (*Matter of White*, 129 Misc. 458; *Matter of Michaelis*, 110 id. 185; *Matter of Hussey*, 67 id. 32.)

The cases cited as supporting a contrary view, I think, are readily distinguishable from the matter now under consideration.

In *Van Rensselaer* v. *Van Rensselaer* (113 N. Y. 207) the language was that the legacy was to be paid "when it shall be convenient for them [the executors], without regard to the time fixed by law," and the Court of Appeals recognizing the general rule said: "But the testator set aside the legal rule by the very terms of his bequest, and made the legacy payable out of a specific fund, and when convenient for the executor." In *Wheeler* v. *Ruthven* (74 N. Y. 428) the estate out of which the distribution was to be made did not come into the hands of the executors until after the expiration of an intervening life estate. In *Thorn* v. *Garner* (113 N. Y. 198) by the terms of the will itself, the legacy was not due until eighteen months after death. In *Bank of Niagara* v. *Talbot* (110 App. Div. 519) the testator directed that not later than the expiration of six years after his decease, according to the judgment of his executor, his property should be converted into money and his estate fully settled and the distributive shares or legacies paid over to the persons entitled thereto, and the Appellate Division said: "Thus it was provided that the legacies did not by the terms of the will become due and payable until six years after the death

of the testatrix, and, consequently, did not bear interest until after that period of time had elapsed."

As the amounts stated were to be paid out of the legacies, if no interest were paid upon them, it would follow that the legatees would be receiving interest on their general legacies including such amounts, although the latter were due and payable to Leopold Geismann, a situation which appears to me to be inequitable. Equally unfair would it be if the same were payable out of the residuary estate, to have the residuary legatees receive accrued income on the residue and the respondents obtain no interest on that part of their respective shares thereof which should be paid to him.

From the foregoing I conclude that interest should be allowed from the time when the legacies became due and payable.

It is also claimed that the agreement in question resulted in an equitable assignment by Solomon Samuel, Fannie Joseph and Celestin Geismann of the amounts which they agreed to pay pursuant to said agreement, and also of so much as was to be paid by Celestin Geismann, which Solomon Samuel had guaranteed, in the event that Celestin Geismann refused to be bound thereby. If this is so, it would follow that interest accrued on the parts thus assigned from the time when the legacies became payable.

The facts in the cases cited against this contention differ from those in the matter now under consideration.

In *Hinkle Iron Co.* v. *Kohn* (229 N. Y. 179) the court states (p. 183) that the test is whether or not an assignment makes an appropriation of the fund so that the debtor is justified in paying the assigned part to the person claiming to be the assignee. In *Addison* v. *Enoch* (48 App. Div. 111) the payment was to be made out of a particular fund, but there was no authorization given to the holder to pay direct to the claimant. In *Attorney-General* v. *Continental Life Ins. Co.* (71 N. Y. 325) the question of a check on a bank was involved, and the point was made that it was not on a particular fund. In *Donovan* v. *Middlebrook* (95 App. Div. 365) there was no direction on the part of the holder of the fund to pay to the alleged donee. The court there significantly says: " ' The test is,' even of an equitable assignment, ' whether the debtor would be justified in paying the debt or the portion contracted about to the person claiming to be assignee.' " (Citing *Fairbanks* v. *Sargent*, 117 N. Y. 320.)

In the present matter, the executors were authorized to make payments and actually did pay the amounts, but without interest, the fund was designated, to wit, the legacies due the respective parties, and there was an authorization to pay direct from the

holders of the fund to the alleged assignee. If I am correct as to this, then the other cases cited on this point, to wit, *Munger* v. *Shannon* (61 N. Y. 251); *Brill* v. *Tuttle* (81 id. 454); *Izzo* v. *Ludington* (79 App. Div. 272; affd., 178 N. Y. 621); *McDonald* v. *Village of Ballston Spa* (34 Misc. 496) and *Conti* v. *Rhind* (164 N. Y. Supp. 52) appear to support the contention of the contestant.

In *Holmes* v. *Evans* (129 N. Y. 140) the court defines an equitable assignment as being one giving a title recognized and protected by equity, although not cognizable at law, and states that it is not essential to the creation of the interest that it should be immediately enforcible. It depends to a great extent upon the intent of the parties as manifested in the writing if there be one. The court also says (p. 145): " There must undoubtedly be a purpose to pass a present interest, * * * a right to the immediate possession and enjoyment, or a right to such enjoyment postponed until the occurrence of some future event."

In *Hofferberth* v. *Duckett* (175 App. Div. 480) the court held (p. 486) that " No particular form of words is necessary to constitute such an assignment, but that any words will suffice which show an intention to transfer the debt, claim or chose in action," citing many cases.

In *Williams* v. *Ingersoll* (89 N. Y. 508) there was no consent that the holder of the fund pay directly to the alleged assignee, and the court in discussing the question there involved said (p. 521): " The form of words used in making the agreement is not alone to receive attention, but all the circumstances of the transaction are to be considered. It is a rule in equity that anything which shows an intention to assign on the one side and from which an assent to receive may be inferred on the other will operate as an assignment if sustained by a sufficient consideration." Here, there was a promise to pay and a consent that the executors pay direct to the contestant, supported by a valuable consideration therein recited, namely, a refraining from prosecution of the objections to the will.

It is my opinion that an equitable assignment resulted and that for this reason also the contestant is entitled to interest upon the amounts which the agreement provided he should be paid for a period one year after the issuance of letters.

It appears to be conceded that Solomon Samuel was authorized to act for Fannie Joseph and that the agreement has been ratified by her, but there is nothing before me to indicate that Solomon Samuel had any authorization from Celestin Geismann to bind him by the agreement in question, and no ratification is shown or admitted. It follows, therefore, that interest on so much of the

items of $10,000 and $4,000 as remained due from time to time was payable out of the legacies of Solomon Samuel and Fannie Joseph and that the interest on so much of the item of $5,000 as remained due from time to time was payable out of the legacies of Solomon Samuel who guaranteed the same.

As the stipulation provided that no further allowance is to be made to the executors or their attorney for costs, etc., costs will be allowed to the contestant payable out of the estate.

Settle decision accordingly and incorporate in decree.