In the Matter of the Accounting of City Bank Farmers Trust Company, as Trustee under the Will of Charles J. Fromberg, Deceased, Respondent. Morton Fromberg, Appellant; Robert L. Howard et al., Respondents.

First Department, December 2, 1952.

*Emanuel Harris* of counsel (*Max E. Greenberg,* attorney), for appellant.

*Emanuel Schwartz* for Robert L. Howard, respondent.

*B. Leo Schwarz* of counsel (*Marc Bazin* with him on the brief; *Lourie & Rosman,* attorneys), for Max M. Levy, respondent.

*Leo Praeger* of counsel (*Edmund W. Bokat* with him on the brief; *Bokat & Bokat,* attorneys), for Leonard P. Levy and another, respondents.

BREITEL, J.   On a contested judicial accounting, a legatee appeals from so much of the decree as awarded costs and disbursements to the attorneys for the successful parties, and directed the payment of interest at the legal rate of 6% from the time the litigated sums became payable.   The contest involved the validity of a number of assignments of a contingent interest in a trust.

Appellant is a son of the testator, who died in 1929.  Under the father's will appellant was to receive $5,000 when he reached twenty-one years of age, $10,000 when he reached twenty-five and $85,000 when he reached thirty-five.   In the event his mother died before he reaches thirty-five, he was to receive the entire principal at age thirty-five.   The mother died in 1942. Appellant became thirty-five in 1949.

In 1938, when appellant was twenty-four years of age, he made a number of assignments of his interest in the estate.   For these assignments, aggregating $112,500, he received $26,250.   In some instances the assignee arranged for life insurance to cover the risk of appellant's death before reaching age thirty-five; in other instances the assignee did not so arrange.   Such death would have extinguished the assignees' interest in the estate. Without detailing the many facts pertinent to each of the assignments it is sufficient to comment that the assignees are being

amply compensated for the real risks undertaken by the size of the sums passing under the assignments, without the addition of interest and costs.

These assignments were contested on the ground that they were usurious and void. The matter was sent to a Referee who found that the assignments were valid absolute transfers, and that appellant's testimony was entitled to little credence. The Referee recommended, after an eight-day trial, that the objections be dismissed. The reference, including the cost of minutes, resulted in an expense to the trust of $5,258.75.

The Surrogate awarded to the several attorneys for the assignees the following sums as costs and disbursements: $1,584, $1,883.12, and $1,500. Of these amounts, in each case $1,500 is for the per diem allowance authorized by section 278 of the Surrogate's Court Act.

Respondents do not claim that the allowances were made under section 231-a of the Surrogate's Court Act. They rely solely on section 278.

The allowances as a matter of discretion should not have been granted. These assignees had undertaken riskful obligations, true enough, but among the risks they took was that of litigation which ensued here. The factual background not adverted to here in detail confirms that taking assignments of an estate interest from a twenty-four-year old involved dealings with a somewhat irresponsible and profligate person. For those real risks receiving back their money several-fold was ample compensation. Indeed, the compensation on its face is shocking and seems overreaching until the circumstances are developed. Then, arguably, assignees appear fully entitled to what they are receiving by virtue of the assignments. But that does not justify adding upon these transactions (improvident from the point of view of the twenty-four-year old legatee) added charges arising from the litigation, except in compelling circumstances not present here.

With respect to interest, it is clear that the assignees are entitled to interest on the funds from the time the funds became payable. Appellant concedes in his brief that respondents stand in his shoes to the extent of the assignments. A question is presented as to what rate of interest should be imposed. The final paragraph of section 218 of the Surrogate's Court Act, while added in 1952 (L. 1952, ch. 492) and therefore not applicable, both appellant and respondents agree sheds light on the rule to be applied. That paragraph reads as follows: " In any action or proceeding to compel payment of a legacy the interest

thereon, if any is found to be payable, shall be at the rate fixed by the will or, if no rate is so fixed, at the rate of three per centum per annum unless the delay in payment was unreasonable, in which event interest shall be at the legal rate for the period of such unreasonable delay ''.

Before the addition of that paragraph the legal rate of interest was used when unreasonable delay in making the payments was chargeable to a fiduciary. The earned rate of interest in this estate was 3%, so that no differential in interest rate results from the amendment. There was no unreasonable delay here by the fiduciary. The delay was caused by appellant and is explained by a very substantial contest that took eight days to try. The amounts paid for the assignments were so small in reference to the amounts assigned that a real question was raised as to whether the transaction were loans rather than assignments absolutely. Neither the form of the writings nor the form of the words used was conclusive on that question. While the contest was unsuccessful, it is not clear that delay caused by this unsuccessful contest was necessarily unreasonable delay.

Although in effect any gain or loss to the fund is in the final eventuality a gain or loss to appellant, directly the charge is on the principal of the trust fund. The interest charges are substantial, being in excess of $22,000 at the 6% rate. Under the circumstances of this case, the pyramiding of accretions on the sums assigned should not be permitted unless the law compels it.

It must be kept in mind that the funds being charged were the property of the testator, not of appellant whose testimony was disbelieved. It is testator's disposition of these funds that we are bound to enforce. To burden those funds with charges not arising out of the operation of the funds or action by the fiduciary which had them in custody is not justified because of the contest between claimants to the funds. This is so even if appellant as residuary legatee is directly affected. Nor is this a technical distinction. Testator, in making the provisions he did, sought to protect the fund for a son in whom he did not wish to place complete confidence until after he attained the age of thirty-five years. That was testator's privilege to do and we should not directly or indirectly permit that privilege to be frustrated, in the absence of rule of law or statute so requiring.

Accordingly, the allowance for costs of $1,500 to each of the attorneys should be stricken, and the decree modified to allow to

the attorneys for respondents costs for the excess over the $1,500 in each case, namely $84 to the attorney for respondent Howard, $383.12 to the attorney for respondent Max M. Levy, and no costs should be allowed to the attorney for respondents Leonard P. Levy and Arthur D. Rosenberg. The decree should be further modified by reducing the rate of interest allowed on the amounts assigned from 6% to 3%. As so modified, the decree should be affirmed, with costs to the trustee payable out of the estate. Settle order on notice.

DORE, J. P., COHN, CALLAHAN and VAN VOORHIS, JJ., concur.

Decree unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with costs to the trustee payable out of the estate. Settle order on notice.