In the Matter of the Estate of HARMON S. AUGUSTE, Deceased.

Surrogate's Court, Westchester County, August 31, 1965.

*Morton Roth* for petitioners. *Bokat & Bokat (Edmund W. Bokat, William V. Homans* and *Arthur J. Homans* of counsel), for Estelle S. Teufel, respondent. *Hays, St. John, Abramson & Heilbron (Milton Sargoy* of counsel), for Chase Manhattan Bank, executor, respondent.

HARRY G. HERMAN, S. The residuary legatee of this estate, for a consideration of $166,000, entered into an agreement as to her first $500,000 interest in the residuary estate with two

individuals, each of whom subsequently assigned his one-half interest in the agreement to one of the petitioners. The executor paid securities and cash aggregating $250,000 to each of the petitioners, but did not pay them interest or any income earned thereon. The questions before the court are whether the petitioners are entitled to interest or to income earned by their shares of the residuary estate prior to payment to them; if so, when the period during which they were entitled to interest commenced; and whether such period was cut short by the acts of their agents in unduly delaying payment to them.

At the time of the decedent's death on October 29, 1949, he was the owner of a 30% interest, vested indefeasibly, in a testamentary trust created under the will of Joseph E. Shoenberg (*Matter of Shoenberg*, 103 N. Y. S. 2d 918, 920). Under the instant decedent's will his residuary estate was bequeathed to Estelle Schaffer Teufel (referred to in the will as Esther Schaffer Auguste), who on November 6, 1957 entered into an agreement with Floyd W. Jefferson and Mark M. Horblit, for the said consideration of $166,000, that the first $500,000 distributable to her by the corporate executor of this estate out of this estate's vested remainder in the afore-mentioned testamentary trust would go to them when the executor received it from the trustees.

On July 8, 1959 Jefferson assigned his one-half interest to petitioner Fitzgerald Cotton Mills and on January 30, 1964 Horblit assigned his one-half interest to petitioner Colonial Fabrics, Inc. The trust beneficiary in the Shoenberg trust had died on October 10, 1962, and that trust terminated. The trustees thereafter delivered the trust *res* to the executor herein on June 22, 1964, and the corporate executor herein made distributions of $250,000 to each of the assignees as of March 9, 1965.

The agreement of November 6, 1957 by Mrs. Teufel provides, in part:

" * * * I * * * do hereby sell, convey, transfer and assign to said Purchasers the first $500,000 of the property distributable to me by the executors of said will of said Harmon S. Auguste, *upon receipt by said executors from the trustee of the trust* created under paragraph " TENTH (B) " of said Shoenberg will, of the property comprising said Thirty Percent Remainder.

" * * * I hereby irrevocably authorize and direct the executors of said will of said Harmon S. Auguste, deceased:

" (a) *to transfer, assign and deliver to said Purchasers, forthwith upon receipt by such executors* of the property comprising said Thirty Percent Remainder *from the trustee* of said " TENTH (B) " trust * * * such of the bonds, stock certificates, cash and/or other items then comprising such property as shall

aggregate in value the full sum of Five Hundred Thousand ($500,000.00) Dollars, at the market value on the date of the transfer, assignment and delivery to said Purchasers of said bonds, stock certificates, cash and/or other property * * * ʺ (italics supplied).

There is no mention whatsoever of interest. Neither does the Jefferson assignment to Fitzgerald Cotton Mills of July 8, 1959 refer to interest. It recites that he is assigning for $175,000 his one-half interest in ʺ the first $500,000.00 of the monies and property to become *distributable* under the residuary clause of said Auguste will *after the receipt by the executors* of said will of the monies and property comprising said Thirty Percent Remainder ʺ (italics supplied) of the Shoenberg trust, and confers the right to institute a proceeding to collect ʺ said undivided one-half interest ʺ.

The Horblit assignment to Colonial Fabrics, Inc., of January 30, 1964, however, assigns his ʺ one-half interest in and to the portion of said residuary legacy acquired by him from said Estelle Schaffer Teufel as aforesaid, together with all the rights and claims of the SELLER in and to the proportionate part of the interest and dividends accruing thereon or attributable thereto, subsequently to October 10, 1962, the date of death of Vivian Beaumont Allen, the life tenant of said trust. ʺ

Horblit is a mature Boston attorney. This was the first time any document referred to interest or income, and coming as it does after the life beneficiary of the Shoenberg trust had died on October 10, 1962, and while the executor of the instant estate was awaiting distribution from the trustees, strikes this court as an ingenious attempt by Horblit to inject for the first time the elements of the present controversy. As noted above, the executor of this estate received payment of this estate's interest in the Shoenberg trust on June 22, 1964.

No contention is made that the transactions herein were usurious. The court is satisfied from the testimony presented and the evidence introduced at the trial herein that the November 6, 1957 agreement was not solely prepared by Horblit, but was an arm's length transaction in which Mrs. Teufel was represented by her own independent counsel; and that at least four drafts were prepared before final execution because of various objections of counsel for each party to the language suggested by opposing counsel.

The initial question to be determined involves the legal consequences flowing from the words employed in the written documents. The objections made at trial to certain questions and to the introduction of certain documents into evidence on the

ground of the parol evidence rule are sustained, and the motions to strike certain testimony on the same ground are granted (cf. Uniform Commercial Code, § 2–202).

The petitioners contend that they stand in the shoes of Mrs. Teufel with respect to their share of this estate, and that, therefore, they, not she, are entitled to the interest thereon. They rely on *Matter of Fromberg* (281 App. Div. 1, affd. 306 N. Y. 700). In that case, where the question of usury was litigated, and where the assignments were held valid, the assignments were silent as to interest. Justice BREITEL stated (p. 3): "With respect to interest, it is clear that *the assignees are entitled to interest* on the funds *from the time the funds became payable*. Appellant concedes in his brief that respondents stand in his shoes to the extent of the assignments." (Italics supplied.) The Surrogate had held that the assignees were entitled to interest on their assigned shares, and on that point he was affirmed by the Appellate Division, which, however, modified the Surrogate's decree by reducing the rate of interest allowed on the amounts assigned *from the time the funds became payable* from 6% to 3% on the ground that delay in payment was not unreasonable (Surrogate's Ct. Act, § 218).

In *Matter of Smith* (280 App. Div. 947, affd. 305 N. Y. 764) the question of usury was litigated, and the validity of the assignments was upheld. Subsequently, on the settlement of the decree therein approving the account of the trustee, an issue arose as to the rate of interest to be awarded in addition to the principal sum of the assignments. It was stated by former Surrogate GRIFFITHS of this court (*Matter of Smith*, N. Y. L. J., Feb. 19, 1953, p. 574, col. 6): "It is undisputed that the assignments in question became due and payable upon the termination of the trust occasioned by the death of the income beneficiary. It is also undisputed that although the instruments of assignment are absolute in form and consequently do not bear interest, nevertheless *interest is payable from the due date* established as afore-mentioned. It does not necessarily follow, however, that the rate of interest must be the legal rate (see Matter of Fromberg, 281 App. Div. 1) * * * The court determines that the rate of interest from the date of the assignments to October 20, 1952, the date of the order of the Appellate Division sustaining the validity of the assignments in question shall be at the rate of 3 per cent." (Italics supplied.)

Thereafter the assignees brought a mandamus proceeding pursuant to the former article 78 of the Civil Practice Act to compel the Surrogate to make a decree directing interest on the

assignments at 6% instead of 3%. The petition was dismissed by Special Term, and the Appellate Division affirmed (*Matter of Levy* v. *Griffiths*, 282 App. Div. 770), stating: " The Surrogate, in entering a decree on the order of this court, ' that the assignees be paid the respective amounts of their assignments *with interest,*' computed the interest at 3%. This was proper. Section 218 of the Surrogate's Court Act provides that interest shall be computed at 3% unless delay in payment was unreasonable. There has been no such finding."

Those cases, admittedly, involved the assignments of contingent remainder interests in testamentary trusts, where the assignees undertook the risks of the extinguishment of their interests in the estate by the death of their assignor prior to the termination of the trust. Here the interest of Mrs. Teufel was vested — her husband's estate (the instant matter) had a vested indefeasible interest in the Shoenberg trust.

But while those cases support the contention of the petitioners that they are entitled to interest, they also hold that interest accrues only from the time the funds become payable. Although the petitioners argue that, standing in the shoes of Mrs. Teufel, the funds and interest thereon became payable as of the termination of the Shoenberg trust on October 10, 1962, they (or Jefferson and Horblit) bargained away whatever rights they had in this respect by specifically providing in the agreement of November 6, 1957, that the $500,000 was payable to them *upon receipt* by the Auguste executor from the Shoenberg trustees, which event occurred on June 22, 1964. Since by express agreement they were not entitled to the fund until that date, they are not entitled to interest thereon prior to that date.

*Matter of Stern* (13 Misc 2d 605) is relied on by the executor and Mrs. Teufel in denying that the petitioners are entitled to any interest herein. The *Stern* case, however, fails to mention *Matter of Fromberg* (*supra*) and *Matter of Smith* (*supra*) with which it appears to be in conflict. The decision in *Stern*, moreover, cites as authority *Matter of Geismann* (133 Misc. 826). In the *Geismann* case interest *was* awarded, but only from the time the legacies were payable (p. 828).

The basic agreement of November 6, 1957 clearly reflects no indication that any present ownership of the $500,000 interest was being conveyed despite the use of the words " sell, convey, transfer and assign ". As noted before, these words were modified by the phrase " upon receipt by said executors from the trustee of the trust ". Petitioners' argument that this was a sale and assignment subject to future delivery when the

Shoenberg trust terminated is a strained interpretation of the agreement. The instrument in question when read in its entirety significantly has no mention of interest.

The fiduciaries in both the instant and Shoenberg estates as well as the Surrogates' Courts of New York County and Westchester County had been given complete notice of the 1957 agreement, and the court construes this instrument as a direction to the fiduciaries in both estates that she had earmarked the first $500,000 that was coming to her as a residuary legatee in her husband's estate, to turn over that amount when the executor received the remainder from the Shoenberg trustees.

The court concludes that under the phraseology of the agreement, the petitioners herein were not entitled to receive the $500,000 when the life tenant in the Shoenberg trust died but only " upon receipt by said executors from the trustees ", and that delivery was made concededly on June 22, 1964.

The executor and Mrs. Teufel further contend that, even if interest is payable, it is not payable after October 8, 1964 on which date counsel for Mrs. Teufel mailed to Mr. Horblit two copies of proposed forms of receipt, release, satisfaction and indemnity, with the understanding that the $500,000 would be paid over by the corporate executor upon receipt by it of the executed receipts and releases, which contained a provision to the effect that their execution was without prejudice to a determination by this court of the question of interest or income thereon. They contend that delay in presentation to the executor of the final executed receipts and releases until on or about March 9, 1965 was caused by the assignees, for various alleged reasons, who thus, it is claimed, are estopped from claiming interest for that period. One of the reasons for the further delay was an asserted claim for legal services against Mrs. Teufel of about $80,000 by the Boston attorney, Horblit.

No matter who caused the delay, however, the funds in the hands of the executor belonged to the petitioners from and after the receipt of the funds by the executor from the Shoenberg trustees, and any interest or income earned thereon after June 22, 1964 belonged to the petitioners, and not to Mrs. Teufel.

The evidence before the court does not support the conclusion that no interest is payable after October 8, 1964, but only that delay in payment by the executor until on or about March 9, 1965 was not so unreasonable as to require interest at 6% (Surrogate's Ct. Act, § 218). In fact, the petitioners do not claim interest at 6%, but only at 3%.

The motion made at trial to dismiss the petition is denied.

The court holds that petitioners are entitled to interest on their assigned residuary shares in this estate at 3% from June 22, 1964, the date the executor received the funds from the Shoenberg trustees, to March 9, 1965, the date of delivery by the executor of the $500,000.